CLAY, Circuit Judge.
*249 Plaintiff CIC Services, LLC appeals the district court's November 2, 2017 order granting Defendants' motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff's complaint alleges that Defendants' Notice 2016-66, 2016-47 I.R.B. 745 was promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 500 et seq. and the Congressional Review Act, 5 U.S.C. § 801 et seq. , and seeks to enjoin its enforcement. For the reasons that follow, we AFFIRM the district court's dismissal.
BACKGROUND
Factual Background
As a part of the American Jobs Creation Act of 2004, Congress delegated authority to the Internal Revenue Service ("IRS") to identify and gather information about potential tax shelters. See 26 U.S.C. § 6707A. In exercising that authority, the IRS requires taxpayers and certain third parties to maintain and submit records pertaining to any "reportable transaction[s]." Id. § 6707A(c). Reportable transactions are those transactions deemed as such by IRS regulations. Id .
Failure to adhere to these IRS requirements can result in significant penalties. For instance, a taxpayer who fails to submit to the IRS a return listing his or her reportable transactions faces a penalty of 75% of his or her tax savings resulting from those transactions, from a minimum of $ 5,000 to a maximum of $ 200,000. Id. §§ 6011, 6707A(b). A "material advisor"-one who provides material aid to a taxpayer in his or her carrying out reportable transactions and who derives a threshold amount of gross income from that aid, see id. § 6111(b)-faces similar penalties. For instance, a material advisor who fails to submit to the IRS a return listing the reportable transactions in which he or she aided faces a penalty of between $ 50,000 and $ 200,000. Id. §§ 6111(a), 6707(b). And a material advisor who fails to maintain a list of the taxpayers that he or she aided in carrying out reportable transactions faces a penalty of $ 10,000 per day if the list is not produced within 20 business days of a request from the IRS. Id. §§ 6112(a), 6708(a).
On November 21, 2016, Defendants published Notice 2016-66 (the " Notice").[1] See 2016-47 I.R.B. 745.The Notice identified certain "micro-captive transactions" as "transactions of interest," a subset of reportable transactions.[2] Id. ; see also 26 C.F.R. § 1.6011-4(b). The Notice explained that these transactions have "a potential for tax avoidance or evasion," but that the IRS "lack[s] sufficient information" to distinguish *250 between those that are lawful and those that are unlawful. 2016-47 I.R.B. 745. By deeming these transactions to be reportable transactions, the Notice imposed the requirements and potential penalties noted above on taxpayers engaging in them, and on material advisors aiding in them. Id.
Procedural History
On March 27, 2017, Plaintiff, a material advisor to taxpayers engaging in micro-captive transactions, filed a complaint in the United States District Court for the Eastern District of Tennessee. Plaintiff's complaint alleges that Defendants promulgated Notice 2016-66 in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq. and the Congressional Review Act ("CRA"), 5 U.S.C. § 801 et seq. , and seeks to enjoin its enforcement. Specifically, Plaintiff alleges that the Notice (1) is a legislative rule that required notice-and-comment rulemaking, (2) is arbitrary and capricious, and therefore ultra vires , and (3) is a rule that required submission for congressional review before it could go into effect. Plaintiff also filed a motion for a preliminary injunction.
On April 21, 2017, the district court denied Plaintiff's motion for a preliminary injunction, reasoning that it would not be in the public interest and that Plaintiff was unlikely to succeed on the merits. Defendants then moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction. Defendants asserted that Plaintiff's complaint was barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a) and the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201 (collectively, the "AIA"),[3] which divest federal district courts of jurisdiction over suits "for the purpose of restraining the assessment or collection of any tax." On November 2, 2017, the district court granted Defendants' motion to dismiss for lack of subject matter jurisdiction.
This appeal followed.
DISCUSSION
I. Standard of Review
We review de novo questions of subject matter jurisdiction, including whether a complaint is barred by the AIA. Lorillard Tobacco Co. v. Chester, Willcox & Saxbe , 589 F.3d 835, 843 (6th Cir. 2009). In reviewing a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), we accept all material allegations in the complaint as true and construe the complaint in the light most favorable to the nonmoving party. United States v. Ritchie , 15 F.3d 592, 598 (6th Cir. 1994).
II. Analysis
A. The AIA
The AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). While there exist some statutory and judicial exceptions to this prohibition, they are few and circumscribed. See RYO Mach., LLC v. U.S. Dep't of Treasury , 696 F.3d 467, 470 (6th Cir. 2012) ("With few exceptions, no court has jurisdiction over a suit to preemptively challenge a tax."). Thus, "whether an injunction can legally issue under the AIA" requires only two inquiries. Id. at 471.
*251 "First, we must consider whether the ... complaint[ ] [is] within the purview of the AIA as a 'suit for the purpose of restraining the assessment or collection of any tax.' " Id. (quoting 26 U.S.C. § 7421(a) ). Second, "[i]f so, we must [consider] whether [the] case falls into an exception to the AIA that would [nevertheless] allow us to [reach] the merits."[4] Id.
The problem with these ostensibly straightforward inquiries is that "courts lack an overarching theory of the AIA's meaning and scope against which to evaluate individual [complaints]." Kristin E. Hickman & Gerald Kerska, Restoring the Lost Anti-Injunction Act , 103 Va. L. Rev. 1683, 1686 (2017). At times, the Supreme Court has given the AIA "literal force," without regard to the character of the tax, the characterization of the preemptive challenge to it, or other non-textual factors. Bob Jones Univ. v. Simon , 416 U.S. 725, 742, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). At other times, it has given the AIA "almost literal" force, considering such factors with an eye towards furthering the AIA's underlying purposes. Id. at 737, 742, 94 S.Ct. 2038. The result, according to some commentators, has been "jurisprudential chaos." Hickman & Kerska, supra , at 1686.
We attempt to find some order amidst the chaos, addressing each of the AIA inquiries in turn.
1. Whether Plaintiff's complaint is within the purview of the AIA
Whether a complaint is within the purview of the AIA depends, commonsensically, on whether it is properly characterized as a "suit for the purpose of restraining the assessment or collection of any tax." RYO , 696 F.3d at 471 (quoting 26 U.S.C. § 7421(a) ). Plaintiff argues that its complaint is not a suit for the purpose of restraining the assessment or collection of taxes. Defendants argue that it is. Reducing the briefs to their cores, Plaintiff asserts that the Supreme Court's recent decision in Direct Marketing Ass'n v. Brohl , 575 U.S. ----, 135 S. Ct. 1124, 191 L.Ed.2d 97 (2015) controls this issue, while Defendants assert that the D.C. Circuit's subsequent decision in Florida Bankers Ass'n v. U.S. Dep't of the Treasury , 799 F.3d 1065 (D.C. Cir. 2015), distinguishing Direct Marketing , is more persuasive. We agree with Defendants and hold that Plaintiff's complaint is within the purview of the AIA.
In Direct Marketing , the Supreme Court analyzed the scope of the Tax Injunction Act ("TIA"), which provides that no federal district court shall "enjoin, suspend, or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the court of such State." 28 U.S.C. § 1341. Although the TIA concerns state as opposed to federal taxes, it was "modeled on" the AIA and the Supreme Court has long looked to one in construing the other. Direct Marketing , 135 S. Ct. at 1129 ; see also Enochs v. Williams Packing & Nav. Co. , 370 U.S. 1, 6, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) ("The enactment of the comparable [TIA] ... throws light on the proper construction to be given [to the AIA]."). The Court began its opinion in Direct Marketing by reaffirming this close connection between the two Acts, and making clear that "[it] assume[s] that *252 words used in both Acts are generally used in the same way." 135 S. Ct. at 1129.
At issue in Direct Marketing were the meanings of "restrain," "assessment," "levy," and "collection," all words, apart from "levy," used in both the TIA and the AIA. See 28 U.S.C. § 1341 ; 26 U.S.C. § 7421(a).
With regard to "restrain," the Court explained that "standing alone [it] can have several meanings." Direct Marketing , 135 S. Ct. at 1132. One is a "broad meaning" that "captures orders that merely inhibit acts of assessment, levy and collection." Id ."Another, narrower meaning, however, is 'to prohibit from action; to put compulsion upon ... [or] to enjoin,' " and this meaning "captures only those orders that stop (or perhaps compel) acts of assessment, levy and collection." Id. (quotation omitted). The Court held that the TIA uses "restrain" in the latter, narrower sense. Id. And in doing so, it relied on two contextual clues: the words preceding "restrain" in the TIA-"enjoin" and "suspend," both of which are "terms of art in equity"-and the "carefully selected list of technical terms" on which "restrain" acts-"assessment," "levy," and "collection." Id. The Court explained that to give "restrain" the broad meaning would "defeat the precision" of these contextual clues, and would render several of the terms superfluous. Id. Thus, the question that the TIA asks is "whether the relief [sought] to some degree stops 'assessment, levy or collection,' not whether it merely inhibits them." Id. at 1133 (emphasis added).
With regard to "assessment" and "collection," the Court noted that it need not "comprehensively define these terms" in order to hold that they did not encompass the reporting requirements at issue. Id. at 1129. Nevertheless, the Court explained that "assessment" refers to "the official recording of a taxpayer's liability." Id. at 1130. "Collection," in turn, "is the act of obtaining payment of taxes due." Id . While both "might also be understood more broadly," the Court held that under either the narrow or the broad definition, each is a "separate step in the taxation process" that occurs after the step of reporting to the taxing authority information used to determine tax liability. Id. at 1129-31. ("[T]he Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs before assessment, levy, or collection.").
Based on these definitions, the Supreme Court in Direct Marketing ultimately held that the TIA did not bar the plaintiff's suit. The plaintiff had sought to enjoin the enforcement of a Colorado law that required certain retailers to maintain and submit records pertaining to sales on which the retailers did not collect state sales and use taxes. Id. at 1128, 1134. The Court reasoned that while enforcement of the law might "improve Colorado's ability to assess and ultimately collect its sales and use taxes from consumers," the law was focused on information gathering as opposed to the discrete, subsequent acts of assessment, levy, and collection. Id. at 1131. Accordingly, a suit seeking to enjoin its enforcement would, if successful, "merely inhibit[ ]" those acts as opposed to "restrain[ing]" them. Id. at 1133. And thus the merits of the plaintiff's suit could be reached.
Shortly after Direct Marketing , the D.C. Circuit distinguished it in Florida Bankers with then-Judge Kavanaugh writing for the majority. 799 F.3d at 1069. At issue in Florida Bankers were the meanings of "tax" and "for the purpose of" as used in the AIA. See 26 U.S.C. § 7421(a).
With regard to "tax," the court asked whether that term covers a "penalty" imposed to enforce a "tax-related statutory *253 or regulatory requirement." Fla. Bankers , 799 F.3d at 1067. The court explained that while "[t]he answer to that question is often no ... the Tax Code defines some penalties as taxes for purposes of the [AIA]." Id. "In those cases, the [AIA] ordinarily applies because the suit, if successful, would invalidate the regulation and thereby directly prevent [the] collection of [that] tax." Id. The court held that this is exactly what occurs when the penalty at issue is located in Chapter 68, Subchapter B of the Tax Code. Id. In 26 U.S.C. § 6671(a), the Tax Code explicitly defines such penalties as taxes for the purposes of the AIA, and that practice has been "clear[ly] and unequivocal[ly]" acknowledged by the Supreme Court. Id. at 1068. Specifically, in Nat'l Fed'n of Indep. Bus. v. Sebelius , the Court explained:
Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the [AIA]. For example, 26 U.S.C. § 6671(a) provides that "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities provided by" Subchapter 68B of the [Tax] Code. Penalties in Subchapter 68B are thus treated as taxes under Title 26, which includes the [AIA].
567 U.S. 519, 544, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012). Thus, the court in Florida Bankers reasoned that the relevant "tax" in its AIA analysis was the penalty-located in Chapter 68, Subchapter B-that would be imposed upon violation of the challenged regulation. 799 F.3d at 1068.
It is on this basis that the court distinguished Direct Marketing . The penalty in that case "was not itself a tax, or at least it was never argued or suggested that the penalty in that case was itself a tax." Id. at 1069. The court explained that "[i]f the penalty here were not itself a tax, the [AIA] would not bar this suit. But because this penalty is deemed a tax by Section 6671(a), the [AIA] bars this suit as premature." Id. In other words, unlike in Direct Marketing , the tax in Florida Bankers was not "two or three steps removed from the regulation in question." Id. Rather, "because the Code define[d] the penalty as a tax, a tax [was] imposed as a direct consequence of violating the regulation." Id. And "[i]nvalidating the regulation would directly bar collection of that tax." Id. (emphasis added). This distinction put the complaint in Florida Bankers "at the heartland of the [AIA]." Id. at 1070.
With regard to "for the purpose of," the court rejected the argument that even if the penalty were a tax, the case was still not within the purview of the AIA because the plaintiffs sought relief not from the penalty but from the underlying regulatory mandate. Id. ("[Plaintiffs] contend instead that they are seeking relief from a regulatory mandate that exists separate and apart from the assessment or collection of taxes."). The court held that "plaintiffs cannot evade the [AIA] by purporting to challenge only the regulatory aspect of a regulatory tax;" the AIA "cannot be sidestepped by such nifty wordplay." Id. And in doing so, the court relied on (1) a line of Supreme Court cases describing the "circular" nature of that argument and looking only to whether the relief sought "would necessarily preclude" the collection of taxes within the meaning of the AIA, Bob Jones Univ. , 416 U.S. 725, 732, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) ; see also Alexander v. "Americans United" Inc. , 416 U.S. 752, 760, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974) ; Bailey v. George , 259 U.S. 16, 42, 42 S.Ct. 419, 66 L.Ed. 816 (1922), (2) the Supreme Court's "recent[ ] indicat[ion]" in NFIB that that argument is meritless, see 567 U.S. at 546, 132 S.Ct. 2566, and (3) the policy implications of *254 accepting that argument, see Fla. Bankers , 799 F.3d at 1071 ("A taxpayer could almost always characterize a challenge to a regulatory tax as a challenge to the regulatory component of the tax. That would reduce the [AIA] to dust in the context of challenges to regulatory taxes."). Id. at 1070-71. Thus, the court refused to give any significance to the part of the regulation the plaintiffs purportedly sought to challenge.
Based on these definitions, the court in Florida Bankers held that the AIA barred the plaintiffs' suit. The plaintiffs had sought to enjoin the enforcement of an IRS regulation requiring banks to report certain interest payments made to account holders. Id. at 1067. The court began with its holding that the relevant tax for its AIA analysis was the penalty that the banks would have to pay if they violated the reporting requirements, not the account-holder taxes the collection of which those requirements were designed to facilitate. Id. at 1068. The court then reasoned that the plaintiffs' suit would, if successful, "invalidate the reporting requirement and restrain (indeed eliminate) the assessment and collection of the tax paid for not complying with [it]." See id. at 1067, 1072. Accordingly, the suit was "for the purpose of restraining the assessment or collection of a tax," and the merits could not be reached. Id.
Against this backdrop, Plaintiff asserts that Direct Marketing controls, analogizing the TIA to the AIA and the Colorado law to the Notice. Defendants assert that Florida Bankers , distinguishing Direct Marketing , is more persuasive. We agree with Defendants, as Florida Bankers is directly on point, consistent with Direct Marketing , and in accordance with a broader survey of Supreme Court and circuit court precedent. Plaintiff's reply brief provides a useful structure for illustrating this conclusion.
First, Plaintiff contends that "[t]he purpose of this suit is not to restrain the assessment or collection of taxes ." (Reply Brief for Appellant at 6.) Plaintiff argues that the penalties imposed for violation of the Notice's requirements are not taxes for purposes of the AIA, and that the only remaining taxes that the Notice implicates are the "nebulous down-stream" taxes of third parties. (Id. ) This argument is unpersuasive.
The third-party taxes the collection of which the Notice is designed to facilitate are not the relevant taxes for this AIA analysis. The relevant taxes are instead the penalties imposed for violation of the Notice's requirements. Like the penalty in Florida Bankers , the penalties here are all located in Chapter 68, Subchapter B of the Tax Code, and as a result are treated as taxes themselves for purposes of the AIA. The Supreme Court has explained as much. See NFIB , 567 U.S. at 544, 132 S.Ct. 2566. We have held as much. See Thomas More Law Ctr. v. Obama , 651 F.3d 529, 540 (6th Cr. 2011), abrogated on other grounds by NFIB , 567 U.S. at 519, 132 S.Ct. 2566.[5] And other circuits have *255 consistently held as much. See, e.g. , Nuttelman v. Vossberg , 753 F.2d 712, 714 (8th Cir. 1985) ; Herring v. Moore , 735 F.2d 797, 798 (5th Cir. 1984) ; Souther v. Mihlbachler , 701 F.2d 131, 132 (10th Cir. 1983) ; Prof'l Eng'rs, Inc. v. United States , 527 F.2d 597, 599 (4th Cir. 1975).
Second, Plaintiff contends that "[t]he purpose of this suit is not to restrain the assessment or collection of taxes." (Rely Brief for Appellant at 11.) Plaintiff argues that the "information gathering" and "records maintenance" requirements of the Notice are focused on the act of reporting to the taxing authority information used to determine tax liability, not the discrete, subsequent acts of assessment or collection of that liability. (Id. ) This argument misses the mark.
While it is true that information reporting is a separate step in the taxation process that occurs before assessment or collection, see Direct Marketing , 135 S. Ct. at 1130, Plaintiff's argument presupposes that the relevant taxes in this AIA analysis are the third-party taxes the collection of which the Notice is designed to facilitate. As previously discussed, that is incorrect. Like the challenged regulation in Florida Bankers , the Notice is indeed "two or three steps removed" from any third-party taxes. 799 F.3d at 1069. But once it is established that the relevant tax is the penalty imposed for violation of the Notice's requirements, it becomes clear that Plaintiff's suit is focused on that tax's assessment or collection. Plaintiff's suit seeks to invalidate the Notice, which is the entire basis for that tax. If successful, Plaintiff's suit would "restrain (indeed eliminate)" it. Id. at 1067.
Third, Plaintiff contends that "[t]he purpose of this suit is not to restrain the assessment or collection of taxes. (Reply Brief for Appellant at 15.) Plaintiff argues that under the narrower definition of "restrain" articulated in Direct Marketing , its suit would not restrain any tax's assessment or collection. This argument also misses the mark, for the same reason as Plaintiff's prior argument.
If the relevant taxes in this AIA analysis were the third-party taxes, and if we decided that the Direct Marketing definition of "restrain" should be extended from the TIA to the AIA, then Plaintiff's argument would likely have merit. Yet, as previously discussed, the former proposition is incorrect. And as a result, we need not engage with the latter. Even assuming arguendo that the Direct Marketing definition should be extended to the AIA,[6] Plaintiff's suit "would have the effect of restraining-fully stopping " the IRS from collecting the *256 penalties imposed for violating the Notice's requirements. See Maze v. Internal Revenue Serv. , 862 F.3d 1087, 1092 (D.C. Cir. 2017) (emphasis added) (also assuming extension of the Direct Marketing definition arguendo ). Plaintiff admits as much. (See Rely Brief for Appellant at 7) ("[I]t is true that the IRS certainly could never collect any penalties ... for noncompliance if Notice 2016-66 is struck down.").
Fourth, Plaintiff contends that "[t]he purpose of this suit is not to restrain the assessment or collection of taxes." (Reply Brief for Appellant at 18.) Plaintiff argues that its suit is challenging the Notice's regulatory requirement and not the penalty. This argument, though intuitive at first glance, is unpersuasive.
Any distinction that once existed in the Supreme Court's AIA jurisprudence between "regulatory" taxes and "revenue-raising" taxes appears to have been "abandoned." Fla. Bankers , 799 F.3d at 1070 ; see also Bob Jones , 416 U.S. at 741 n.12, 94 S.Ct. 2038. In Bob Jones , the Court instead emphasized the effect of the plaintiff's suit. It held that where the relief sought would "necessarily preclude" the assessment or collection of the relevant tax, the suit "falls squarely within the literal scope" of the AIA and federal courts lack jurisdiction over it. Bob Jones , 416 U.S. at 731, 94 S.Ct. 2038. Yet, the Court has made clear that the purpose of the suit is still a factor in any AIA analysis. In Bob Jones , the Court noted that there was little doubt that a "primary purpose of [the suit]" was to prevent assessment or collection of the relevant tax, regardless of how the challenge was characterized. Id. at 738, 94 S.Ct. 2038. And in Alexander , the Court similarly noted that the "obvious purpose of [the suit]" was to prevent assessment or collection of the relevant tax, regardless of how the challenge was characterized. 416 U.S. at 761, 94 S.Ct. 2053.
The Court thus seems willing to infer a purpose to restrain the assessment or collection of taxes in instances where it appears that the plaintiff is-in the words of the D.C. Circuit-trying to "sidestep" the AIA with "nifty wordplay." Fla. Bankers , 799 F.3d at 1070 ; see also Alexander , 416 U.S. at 761, 94 S.Ct. 2053 ("The [plaintiff's purported] goal is merely a restatement of the [the plaintiff's actual goal] and can be accomplished only by restraining the assessment and collection of a tax in contravention of [the AIA]."); Z Street v. Koskinen , 791 F.3d 24, 28-30 (D.C. Cir. 2015) ("In other words, unlike the plaintiffs in Bob Jones and [ Alexander ], Z Street does not have the 'obvious purpose' of [restraining the assessment of collection of taxes]."). Relying largely on these cases, the court in Florida Bankers paid even less mind to the subjective purpose of the suit, holding unequivocally that "[a] challenge to a regulatory tax comes within the scope of the [AIA], even if the plaintiff claims to be targeting the regulatory aspect of the regulatory tax." 799 F.3d at 1070-71. The court explained that a challenge to the regulatory aspect of a regulatory tax is "necessarily" also a challenge to the tax aspect of a regulatory tax because invalidating the former would "necessarily" invalidate latter. Id. at 1071.
Nevertheless, a panel of this Court recently seemed prepared to recognize the distinction urged by Plaintiff and subsequently rejected by the Florida Bankers court. See Autocam Corp. v. Sebelius , 730 F.3d 618, 622 (6th Cir. 2013), vacated by Autocam Corp. v. Burwell , 573 U.S. 956, 134 S. Ct. 2901, 189 L.Ed.2d 852 (2014) ("The plaintiffs seek to enjoin a part of the coverage requirements imposed by the [ACA] mandate, not the IRS's mechanism for collecting 'tax' from noncompliant employers. Such suits are common in other regulatory contexts ...."). But Autocam *257 was decided before Florida Bankers , dedicated few words to its AIA analysis, and in any event, having been vacated by the Supreme Court, is no longer good law. See Hill v. Marshall , 962 F.2d 1209, 1213 (6th Cir. 1992). Additional cases cited by Plaintiff and by the dissent in Florida Bankers in support of this distinction are similarly unhelpful.[7]
Ultimately, especially in light of the Supreme Court's rule favoring "clear boundaries" in the interpretation of jurisdictional statutes, see Direct Marketing , 135 S. Ct. at 1131, we find the D.C. Circuit's recent, unequivocal pronouncement on this issue in Florida Bankers persuasive. As the Supreme Court has explained "time and again," the AIA is "more than a pleading exercise," and to allow Plaintiff's argument to succeed would "reduce the [AIA] to dust in the context of challenges to regulatory taxes." Fla. Bankers , 799 F.3d at 1071. A challenge to a regulatory tax comes within the scope of the AIA, even if the plaintiff claims to be targeting the regulatory aspect of the regulatory tax, because a challenge to the regulatory aspect of a regulatory tax is necessarily also a challenge to the tax aspect of a regulatory tax. Id. Invalidating the former would "necessarily" invalidate the latter. Id .
In sum, we hold that Plaintiff's complaint seeking to enjoin the enforcement of the Notice is properly characterized as a "suit for the purpose of restraining the assessment or collection of any tax." RYO , 696 F.3d at 471 (quoting 26 U.S.C. § 7421(a) ). Thus, Plaintiff's complaint is within the purview of the AIA and the district court does not have subject matter jurisdiction over it unless an exception applies.[8]
*258 2. Whether this case falls into an exception to the AIA
As noted above, the statutory and judicial exceptions to the AIA are few and circumscribed. See RYO , 696 F.3d at 471. Plaintiff asserts that this case falls into the judicial exception created by the Supreme Court in South Carolina v. Regan , 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). In that case, South Carolina sought to enjoin a federal law that made interest on state-issued bearer bonds taxable. Id. at 370, 104 S.Ct. 1107. The Court allowed the merits of this challenge to be reached, even though it was within the purview of the AIA, because there was no "alternative legal avenue" by which South Carolina could challenge the legality of the tax. Id. at 373, 104 S.Ct. 1107. South Carolina did not bear the tax itself-the bondholders did-and as a result South Carolina lacked the legal avenues available to the bondholders. Id. at 378, 104 S.Ct. 1107. Without a newly crafted exception to the AIA, it had no way to challenge the law's constitutionality. Id.
However, as these facts suggest, and as we have explained, "this exception is very narrow." RYO , 696 F.3d at 472. "Because of the strong policy animating the [AIA], and the sympathetic, almost unique facts in South Carolina , courts have construed the South Carolina exception very narrowly, undermining [the] plaintiff's efforts to fit its own claims within the confines of this exception." Id. (quotation omitted). As in RYO , this case "is distinguishable from South Carolina in various ways." Id.
Most significantly, the Supreme Court contrasted the facts of South Carolina with cases in which plaintiffs have "the alternative remedy of a suit for a refund." 465 U.S. at 374-75, 104 S.Ct. 1107 ; accord RYO , 696 F.3d at 472. Plaintiff does not contest that it has this alterative remedy. Rather, Plaintiff challenges whether that remedy is sufficiently meaningful. Plaintiff contends that having to "break the law" by violating the Notice, and then sue for a refund, is "no remedy at all." (Brief for Appellant at 38-40.) Contrary to Plaintiff's contention however, that is exactly what the AIA is designed to require. The AIA "serves two related purposes," Dickens v. United States , 671 F.2d 969, 971 (6th Cir. 1982), "to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to disputed sums be determined in a suit for refund." Williams Packing , 370 U.S. 1 at 7, 82 S.Ct. 1125. Thus, we hold that Plaintiff's complaint does not fall into the South Carolina exception to the AIA.
CONCLUSION
The broader legal context in which this case has been brought is not lost on this Court. Defendants "do not have a great history of complying with APA procedures, having claimed for several decades that their rules and regulations are exempt from those requirements." Hickman & Gerska, supra , at 1712-13. And despite the jurisdictional nature of this appeal, Plaintiff has made its thoughts on the merits abundantly clear, emphasizing that " Notice 2016-66 's Issuance and Enforcement is an Obvious Violation of the APA." (Reply Brief for Appellant at 4.) But that does not *259 in and of itself give federal district courts subject matter jurisdiction over suits seeking to enjoin the assessment or collection of taxes. Absent further instruction from Congress or the Supreme Court, such suits are barred by the AIA.
For the reasons set forth above, we AFFIRM the district court's dismissal.
DISSENT

Notice 2016-66 was amended by Notice 2017-08, but only with regard to various deadlines. See 2017-3 I.R.B. 423. Accordingly, we refer only to Notice 2016-66.

Micro-captive transactions are "a type of transaction ... in which a taxpayer attempts to reduce the aggregate taxable income of the taxpayer, related persons, or both, using contracts that the parties treat as insurance contracts and a related company that the parties treat as a captive insurance company." Id. The details of these transactions and their tax implications for those that engage in them are not relevant to this appeal. If desired, more information can be found at 26 U.S.C. § 831(b) and at IRS News Release IR-2018-62 (Mar. 19, 2018).

The Anti-Injunction Act and the tax exception to the Declaratory Judgment Act are "to be interpreted coterminously." Ecclesiastical Order of the ISM of AM, Inc. v. Internal Revenue Serv. , 725 F.2d 398, 404-05 (6th Cir. 1984). For simplicity, we refer to both as the "AIA."

In this way, the AIA "creates a narrow exception to the general administrative law principle that pre-enforcement review of agency regulations is available in federal court." Fla. Bankers Ass'n v. U.S. Dep't of the Treasury , 799 F.3d 1065, 1066 (D.C. Cir. 2015) ; see also Bob Jones Univ. v. Simon , 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). Cf. Abbott Laboratories v. Gardner , 387 U.S. 136, 140-41, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

In Thomas More Law Ctr. , we explained at length that:
In many contexts, the law treats "taxes" and "penalties" as mutually exclusive. ... [but] [o]ther provisions of the Internal Revenue Code, to be sure, show that some "penalties" amount to "taxes" for purposes of the [AIA]. Not surprisingly, for example, Chapter 68 of the Revenue Code imposes "penalties" on individuals who fail to pay their "taxes." Less obviously, but to similar effect, subchapter B of chapter 68 of the Revenue Code imposes other "penalties" related to the enforcement of traditional taxes. Under section 6671, "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the penalties and liabilities provided by [subchapter B of chapter 68]." All of these "penalties" thus count as "taxes," including for purposes of the [AIA]. Otherwise, the recalcitrant tax protester could sue to preempt collection of a substantial monetary charge (accumulated penalties and interest) but not what will often be a smaller charge (the tax owed).
651 F.3d at 539 (internal citations omitted).

Whether the Direct Marketing definition should be extended from the TIA to the AIA is unclear. The Tenth Circuit chose not to do so in Green Solution Retail, Inc. v. United States , 855 F.3d 1111, 1118 (10th Cir. 2017). In that case, the court explained that one of the two reasons behind the Supreme Court's choice of the narrower definition in Direct Marketing was the fact that it was surrounded by "enjoin" and "suspend," both of which are terms of art in equity, and both of which are absent from the AIA. Id. at 1119. In light of that difference, the court in Green Solution held that Direct Marketing did not implicitly overrule its prior cases applying the broad definition of "restrain." Id. at 1116. This circuit has similar precedent. See, e.g. , Dickens v. United States , 671 F.2d 969, 971 (6th Cir. 1982) ("The [AIA] is equally applicable to activities which are intended to or may culminate in the assessment or collection of taxes.") (internal quotations omitted).

In Seven-Sky v. Holder , 661 F.3d 1, 8-9 (D.C. Cir. 2011), abrogated on other grounds by NFIB , 567 U.S. at 519, 132 S.Ct. 2566, the D.C. Circuit noted that "[t]he harms appellants allege ... exist as a result of the [ACA coverage] mandate, not the penalty. ... The individual mandate and the shared responsibility payment create different legal obligations, for different categories of people, at different times." But the D.C. Circuit's more recent decision in Florida Bankers deemed that passage dicta. See 799 F.3d at 1072 n.3. Additionally, in Korte v. Sebelius , 735 F.3d 654, 669 (7th Cir. 2013) and Hobby Lobby Stores, Inc. v. Sebelius , 723 F.3d 1114, 1127 (10th Cir. 2013), the courts emphasized that the regulation at issue was a separate provision of the U.S. Code structured not as a predicate to the imposition of a tax, but as a mandate enforceable by a variety of different mechanisms. That is not the case here.

The dissent poses a hypothetical that it finds problematic in light of our holding: a reporting requirement discriminatorily imposed upon a protected class and enforced by a penalty located in Chapter 68, Subchapter B of the Tax Code. See Dis. Op. at 261. According to the dissent, the AIA could not bar a pre-emptive challenge to this requirement, "without warping the meaning of the statute beyond recognition," at least in part because the purpose of the suit plainly would be "to end discriminatory action by the Government," not to enjoin the assessment or collection of a tax. Id.
What troubles the dissent about its hypothetical result is not entirely clear. To the extent that it is the clarity of the purpose of such a suit that troubles the dissent, the same purpose would clearly underlie, for instance, a preemptive challenge to tax investigations discriminatorily targeted at a protected class; yet that challenge would likely be barred by the AIA. See, e.g. , Clavizzao v. United States , 706 F. Supp. 2d 342, 346 (S.D.N.Y. 2009) ("[U]nder the [AIA], a plaintiff cannot even seek an injunction preventing the IRS from investigating tax liabilities in an allegedly discriminatory or harassing fashion."). To the extent that it is the constitutional nature of such a suit that troubles the dissent, "decisions of [the Supreme] Court make it unmistakably clear that the constitutional nature of a taxpayer's claim ... is of no consequence" under the AIA; "the taxpayer must succumb to an unconstitutional tax, and seek recourse only after it has been unlawfully exacted." United States v. Clintwood Elkhorn Min. Co. , 553 U.S. 1, 10, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008) (quotation omitted) (alteration in original). And to the extent that it is the treatment of certain penalties as taxes for purposes of the AIA that troubles the dissent, we are bound by the Supreme Court's allowance of that practice, whatever its merits or shortcomings. See NFIB , 567 U.S. at 544, 132 S.Ct. 2566 ("Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the [AIA].").