[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-11041

————————————

GREEN ROCK LLC,

Plaintiff-Appellee,

*versus*

INTERNAL REVENUE SERVICE,
U.S. DEPARTMENT OF TREASURY,
UNITED STATES OF AMERICA,

Defendants-Appellants.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cv-01320-ACA

———————————

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the Internal Revenue Service violated the Administrative Procedure Act by issuing Notice 2017-10 without public notice and comment. Notice 2017-10 requires taxpayers and their advisors to comply with reporting requirements when claiming deductions for donations of conservation easements. Green Rock, LLC, solicited taxpayers to invest in arrangements promising conservation-easement deductions, and it coordinated with legal and accounting professionals to satisfy the reporting requirements triggered by those deductions. After Green Rock sued the Service to challenge Notice 2017-10, the district court granted summary judgment for Green Rock. It ruled that the Service promulgated Notice 2017-10 unlawfully because Congress did not expressly authorize its issuance without notice and comment. The district court set Notice 2017-10 aside for Green Rock. We affirm.

## I. BACKGROUND

Our federal tax system "is based on a system of self-reporting." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975). Congress delegated to the Secretary of the Treasury—acting through the Internal Revenue Service—the authority to collect information and prescribe regulations as necessary to assess and collect federal taxes.

*See* 26 U.S.C. § 6011(a); *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586–87 (2021). In response to the proliferation of certain corporate tax sheltering strategies, the Secretary designed a comprehensive disclosure regime—a "reportable transaction" regime—to target those shelters and ferret out improper tax-avoidance transactions. *See* U.S. DEP'T OF THE TREAS., THE PROBLEM OF CORPORATE TAX SHELTERS, 59–64 (July 1999), https://perma.cc/9G3Q-TVZN. In 2000, relying on the authority Congress delegated through section 6011(a), the Secretary promulgated preliminary reportable transaction regulations. *See* Temp. Treas. Reg. § 1.6011-4T, 65 Fed. Reg. 11,205 (Mar. 2, 2000) (proposed regulation); 65 Fed. Reg. 11,269 (Mar. 2, 2000) (notice of public hearing).

In 2003, the Secretary published a final regulation enacting the reportable transaction regime. *See* Treas. Reg. § 1.6011-4, 68 Fed. Reg. 10,161 (Mar. 4, 2003). And in 2004, Congress passed section 6707A of the Revenue Code to provide civil penalties for violators. *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, 1575 (codified in part at 26 U.S.C. § 6707A); *see also* S. REP. NO. 108-192, at 90 (2003) (recognizing the Secretary's disclosure framework and the need for penalties to strengthen its efficacy). The 2003 Treasury regulation and the 2004 Act remain in effect and serve as the backbone of today's reportable transaction regime.

Taxpayers must disclose their participation in "reportable transactions"—that is, transactions that the Service has determined have "a potential for tax avoidance or evasion." 26 U.S.C.

§ 6707A(c)(1). Although taxpayers remain free to participate in those transactions, the failure to disclose them triggers sanctions and monetary penalties. *See id.* §§ 6707A(b), 6011. And a taxpayer's "material advisor"—one who provides "material aid, assistance, or advice"—is also subject to penalties for disclosure violations. *Id.* § 6111(a), (b)(1)(A)(i); *see id.* §§ 6707(b), 6708(a), 6112. Disclosure is central to the Service's enforcement efforts. *See Tax Shelters: Who's Buying, Who's Selling, and What's the Government Doing About It?: Hearing Before the S. Comm. on Fin.*, 108th Cong. 196 (2003), https://perma.cc/RU7A-AX5C.

This appeal concerns a "listed transaction"—a kind of reportable transaction that the Service has "specifically identified" as a tax-avoidance transaction. *See* 26 U.S.C. § 6707A(c)(2). Listed transactions are potentially the most abusive transactions. Listing is intended to provide taxpayers with a "bright line" and "clear and objective" definition of the specific conduct that the Service considers presumptively suspicious and subject to heightened disclosure. *See* Elaine Church & Corina Trainer, *Reportable Transactions: A Comprehensive Disclosure Regime to Combat Tax Shelters*, 57 MAJOR TAX PLAN. 12-1, 12-8 (2005).

The designation of a listed transaction triggers significant reporting and recordkeeping requirements. *See* 26 U.S.C. §§ 6011, 6111. For each listed transaction, a taxpayer must file a Form 8886. *See id.* § 6011(a); Treas. Reg. § 1.6011-4(d). And a material advisor must file a Form 8918. *See* 26 U.S.C. § 6111(a); Treas. Reg. § 301.6111-3(d) (2011). Material advisors also must keep detailed

records for each listed transaction. *See* 26 U.S.C. § 6112(a). The Service estimates that completing Form 8886 and Form 8918 take 21.5 and 14.5 hours respectively.

Taxpayers and material advisors who violate reporting requirements face stiff monetary penalties. A taxpayer who fails to disclose information about a listed transaction faces a penalty of at least $10,000 (or $5,000 if the taxpayer is a natural person), and up to $200,000 (or $100,000 if a natural person). *Id.* § 6707A(a)–(b). And a material advisor to a listed transaction that fails to disclose faces a penalty of at least $200,000 and up to 50 percent of the gross income the advisor receives for its advice or assistance. *Id.* § 6707(b)(2). If the disclosure violation is willful, a material advisor faces a penalty of up to 75 percent of its gross income and possible criminal sanctions. *Id.* §§ 6707(b)(2), 7203.

To date, the Service has identified 36 listed transactions—28 through revenue "notice" and others through revenue "ruling." *See Recognized Abusive and Listed Transactions*, IRS, https://perma.cc/G647-GQAZ (last updated May 3, 2024) (34 active listed transactions and 2 de-listed transactions). A revenue notice is a form of official Service guidance published in the Internal Revenue Bulletin, the "authoritative instrument for announcing official rulings and procedures of the [Service]." *See Internal Revenue Bulletins*, IRS, https://perma.cc/PT6B-36T8 (last updated Aug. 14, 2023). Revenue notices are not published in the Federal Register and do not undergo public notice and comment. *See* Stephanie Hunter McMahon, *Classifying Tax Guidance According to End Users*,

73 TAX LAW. 245, 256–59 (2020). A revenue ruling is the Service's interpretation of an existing statute or regulation, and it is also published exclusively in the Bulletin without undergoing notice and comment. *Id*. So, for over two decades, the Service has listed transactions without notice-and-comment procedures. And 28 of the 34 existing listings took effect before the American Job Creation Act created civil penalties for the reportable transaction regime. *See Recognized Abusive and Listed Transactions*, *supra*. (28 listed transactions designated before October 2004).

Litigants had long believed that administrative challenges to the Service's listing procedures were barred by the Anti-Injunction Act, which bars lawsuits "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a); *see, e.g.*, *CIC Servs., LLC v. IRS*, 925 F.3d 247, 251–57 (6th Cir. 2019) (discussing the application of Anti-Injunction Act to pre-enforcement challenges to revenue notices), *rev'd and remanded*, 141 S. Ct. 1582 (2021). But the legal landscape changed in 2021. The Supreme Court held, in *CIC Services*, that a material advisor could seek a preliminary injunction against the enforcement of revenue notice because to challenge the reporting requirements of a notice is not to oppose the collection of a tax. *See* 141 S. Ct. at 1592. In the wake of *CIC Services*, several litigants have successfully challenged listing notices as unlawfully promulgated without notice and comment. *E.g.*, *Mann Constr., Inc. v. United States*, 27 F.4th 1138 (6th Cir. 2022) (holding Notice 2007-83 unlawful for lack of notice and comment); *Green Valley Invs., LLC v. Comm'r of Internal Revenue*, Nos. 17379-19, 17380-

19, 17381-19, & 17382-19, 2022 WL 16834499 (T.C. Nov. 9, 2022) (holding Notice 2017-10 unlawful for lack of notice and comment).

Green Rock is a limited liability company based in Birmingham, Alabama. It raises money from investors and serves as a "material advisor," *see* 26 U.S.C. § 6111(b)(1)(A), for syndicated conservation-easement arrangements. In those arrangements, an investor buys into a pass-through entity that holds real property; the pass-through entity donates a conservation easement that agrees to restrict land uses associated with the property; and the investor claims a tax deduction for the value of the donation. *See* Notice 2017-10, Listing Notice—Syndicated Conservation Easement Transactions, 2017-4 I.R.B. 522, 544–45 (Jan. 23, 2017).

Conservation-easement arrangements rely on a statutory tax deduction—codified in section 170(h) of the Revenue Code—that Congress enacted to encourage conservation-related donations. *See* 26 U.S.C § 170(h). As Green Rock puts it, "Land conservation is a good thing." So Congress provided a tax deduction for persons who donate real property or an easement to a conservation organization. Donors who give a "qualified real property interest" "to a qualified organization" "exclusively for conservation purposes," and who agree to restrict the use of their land "in perpetuity," may claim a tax deduction. *Id.* § 170(h)(1)–(2). After obtaining an appraisal of the "fair market value" of the donated interest, the taxpayer is entitled to a corresponding deduction on its federal return. *See* Treas. Reg. § 1.170A-14(h) (2023).

Conservation-easement syndicates provide commercial access to the section 170(h) deduction, and most syndicates "appear to be highly abusive tax shelters." SEN. COMM. ON FIN., SYNDICATED CONSERVATION-EASEMENT TRANSACTIONS: BIPARTISAN INVESTIGATIVE REPORT, S. Doc. No. 116-44, at 1 (2d Sess. 2020), https://perma.cc/RHX6-VTC7. An abusive syndicator will purchase idle land and then hire an appraiser willing to "give[] the land a fancifully high valuation," perhaps as a housing or other luxury development. *See* Jay Adkisson, *Unhappy Times for Syndicated Conservation Easements*, FORBES (Nov. 19, 2023, 12:58 a.m.), https://perma.cc/5H8J-VTDV. The syndicator then sells stakes to investors seeking to benefit from the potential tax deduction before donating a conservation easement at an artificially inflated valuation. *Id.* A Senate report estimated that these tax shelters resulted in $26.8 billion of deductions between 2010 and 2017. *See* SYNDICATED CONSERVATION-EASEMENT TRANSACTIONS, *supra*, at 2–3 ("The syndicated conservation-easement transactions examined in this report appear to be nothing more than retail tax shelters that let taxpayers buy tax deductions.").

The Service published Notice 2017-10 to designate certain conservation-easement transactions as presumptively tax-avoidant listed transactions. *See* 2017-4 I.R.B. 544. The notice covers transactions in which three criteria are present: first, where a taxpayer purchases a property interest through a "syndicate" or pass-through entity; second, where the taxpayer is solicited through "promotional materials" that tout an available charitable deduction; and third, where the taxpayer is promised a deduction that values the

donated easement at or above "two and one-half times the amount" invested in the syndicate. *Id.* at 545 (listing transactions where an "investor receives promotional materials that offer prospective investors in a pass-through entity the possibility of a charitable contribution deduction that equals or exceeds an amount that is two and one-half times the amount of the investor's investment").

Green Rock served as a material advisor to transactions covered by Notice 2017-10. It never violated Notice 2017-10, and it complied with Form 8886 and Form 8918 reporting requirements for several years. In 2021, Green Rock filed suit under the Administrative Procedure Act, *see* 5 U.S.C. §§ 551–559, 701–706. It sought to set aside Notice 2017-10 as a legislative rule improperly issued without notice-and-comment procedures, and as arbitrary, capricious, and otherwise contrary to law.

In December 2022, while this suit was pending in the district court, Congress amended section 170(h) to provide that syndicates would no longer be allowed to write off easement donations at inflated valuations. *See* Consolidated Appropriations Act, Pub. L. No. 117-328, 136 Stat. 4459, 5393 ("A contribution by a partnership . . . shall not be treated as a qualified conservation contribution for purposes of [section 170(h)] if the amount of such contribution exceeds 2.5 times the sum of each partner's relevant basis in such partnership."). That legislation effectively eliminated the deductions that Notice 2017-10 would have made subjected to disclosure, but the amendment is not retroactive and is not applicable to this

appeal. After Congress eliminated conversation-easement deductions at inflated valuations, Green Rock ceased syndicating conservation easements. *See* GREEN ROCK, https://perma.cc/F72A-79B9 (last visited May 13, 2004).

The district court granted summary judgment for Green Rock. It adopted the reasoning in *Mann*, 27 F.4th at 1144, to conclude that Congress had not expressly exempted listed transactions from notice-and-comment rulemaking. It "set the notice aside" but made clear that its order was "binding only on the parties to this case." It did not address Green Rock's argument that the Notice was arbitrary and capricious.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1306 (11th Cir. 2021). *De novo* review of a summary judgment against agency action is, "in effect, a direct review of the agency's decision." *Id.*

## III. DISCUSSION

To enact regulations that have the force of law, a federal agency ordinarily must abide by the notice-and-comment procedures prescribed in the Administrative Procedure Act, 5 U.S.C. § 553(b). *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302–03 (1979) ("legislative" rules—those that are "binding" or have the "force of law"—must be promulgated through the procedures set forth in the Administrative Procedure Act (citation and internal quotation marks omitted)). The agency must publish a notice of the proposed regulation, offer the public an opportunity to voice comments and

concerns, consider and respond to feedback, and include in the final regulation a "concise general statement of" the basis and purpose of the regulation. 5 U.S.C. § 553(c). This process "gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes—and it affords the agency a chance to avoid errors and make a more informed decision." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019).

Congress may choose to exempt an agency from notice and comment if "it does so expressly." 5 U.S.C. § 559. The Administrative Procedure Act, "enacted by one Congress[,] cannot bind a later Congress," and so the current Congress must "remain[] free" to exempt agencies from the scope of its prior legislation. *See Dorsey v. United States*, 567 U.S. 260, 274 (2012). The Supreme Court has explained that "[e]xemptions from the terms of the Administrative Procedure Act are not lightly to be presumed." *Marcello v. Bonds*, 349 U.S. 302, 310 (1955). But Congress need not "employ magical passwords in order to effectuate an exemption." *Id.*

Exemptions are provided where Congress "plainly expresses a congressional intent to depart from normal [Administrative Procedure Act] procedures." *Asiana Airlines v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998); *see also Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 686 (D.C. Cir. 1984) (Scalia, J.) ("Congress's *intent to make a substantive change* [must] be clear."). The heart of the inquiry is whether Congress has expressly established procedures "so clearly different from those required by the [Administrative Procedure Act] that it must have intended to

displace" notice and comment. *Asiana Airlines*, 134 F.3d at 397; *see Lockhart v. United States*, 546 U.S. 142, 145 (2005) (evaluating whether Congress "clearly" departed from the Act's baseline rule).

The express-exemption rule sets "a high bar." *Citizens for Resp. & Ethics in Washington v. FEC*, 993 F.3d 880, 889 (D.C. Cir. 2021). For example, the Supreme Court in *Marcello* found an express exemption in section 242(b) of the Immigration and Nationality Act of 1952, which included the following language: "The procedure [herein prescribed] shall be the sole and exclusive procedure for determining the deportability of an alien under this section." 349 U.S. at 303, 309–10 (alteration in original) (quoting 8 U.S.C. § 1252(b) (1955)). And in *Asiana Airlines*, our sister circuit found an express exemption in the Federal Aviation Reauthorization Act, which directed the agency to "publish in the Federal Register an initial fee schedule and associated collection process as an interim final rule, pursuant to which public comment will be sought and a final rule issued." 134 F.3d at 398 (quoting 49 U.S.C. § 45301(b)(2)) (explaining how that language "specifies procedures which differ from those of the [Administrative Procedure Act]").

No such express language appears in the statute before us. The Revenue Code does not expressly or otherwise exempt the listing of transactions from the Administrative Procedure Act. The parties agree on the Code provisions that might provide an exemption: the definitions of a "reportable transaction" and a "listed transaction." *See* 26 U.S.C. § 6707A(c)(1)–(2). But these provisions make no explicit reference to notice and comment, the

Administrative Procedure Act, or procedural requirements at all. *See Mann*, 27 F.4th at 1146 ("The statutes do not provide *any* express direction to the agency regarding its procedure for identifying reportable and listed transactions." (citation and internal quotation marks omitted)). Section 6707A(c)(1) of the Revenue Code defines a "reportable transaction" as "any transaction with respect to which information is required to be included with a return or statement because, *as determined under regulations prescribed under section 6011*, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1) (emphasis added). And the immediately ensuing subsection (c)(2) defines a "listed transaction" as "a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011." *Id.* § 6707A(c)(2).

Recall that section 6707A, enacted by the American Jobs Creation Act of 2004, established civil penalties to support the existing Treasury regulation. *See* Treas. Reg. § 1.6011-4 (final regulation implementing the reportable transaction regime). The Revenue Code adopted the "reportable" and "listed" transaction terminology from the Treasury regulation. Indeed, the statutory "listed transaction" definition, *see* 26 U.S.C. § 6707A(c)(2), uses language materially similar to the regulatory definition, which defines a "listed transaction" as "a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction

and identified by notice, regulation, or other form of published guidance as a listed transaction." Treas. Reg. § 1.6011-4(b)(2).

Notably, the 2003 Treasury regulation provides a process for identifying listed transactions: it states that the Service may list transactions "*by notice*, regulation, or other form of published guidance." *Id.* (emphasis added). "Notice" refers to a revenue notice—that is, official Service guidance published in the Internal Revenue Bulletin and not subject to public notice and comment. *See* McMahon, *supra*, at 257–58. But, of course, an agency regulation alone cannot displace the notice-and-comment requirements of the Administrative Procedure Act.

The Service argues that through a series of statutory cross-references, section 6707A ratified the entirety of the 2003 Treasury regulation, including the language specifying the Service's listing process. According to the Service, because Congress was aware of the regulation and adopted parts of its language, Congress must have also intended to endorse the notice-listing *process*. But the Code omits the regulation's "by notice" language. So the Service would have us rely on the phrase "as determined under regulations prescribed under section 6011," *see* 26 U.S.C. § 6707A(c)(1), as a statutory hook to overcome the requirement of notice and comment.

To be sure, Congress was aware of the Treasury regulation. The parallel language in the Code, the Treasury regulation, and the legislative history of the 2004 Act suggest that Congress knew of the Service's listing process and of existing listed transactions. *See, e.g.,* H.R. REP. NO. 109-455, at 125 & nn.97–101,103 (2006) (Conf.

Rep.). And we generally presume that when Congress legislates and does not disturb an agency's existing regulation, Congress ratifies the agency's legal interpretation. *See, e.g.*, *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) (citing *United States v. Bailey*, 34 U.S. 238, 256 (1835)). But when it comes to the Administrative Procedure Act, the presumption of acquiescence is not enough—something more is needed to overcome "expressly" the requirements of the Act. *See Mann*, 27 F.4th at 1146 (section 6707A suggests that "Congress was aware of the [Service's] transaction-listing procedures," but the statutory cross-reference does "not alone suffice to show an express exemption from" notice and comment).

The Service hangs its hat on the statutory phrase "*as* determined *under* regulations prescribed under section 6011," embedded in the definition of "reportable transaction." *See* 26 U.S.C. § 6707A(c)(1) (emphasis added). The Service argues that the preposition "under" is best understood in context to mean "in accordance with." So according to the Service, section 6707A(c)(1) means that Congress intended for the *process* for defining reportable and listed transactions to be provided by—to be "determined in accordance with"—the 2003 Treasury regulation promulgated under section 6011. This understanding is, the Service argues, bolstered by the use of the adverb "as," which means "in the manner," which is "a phrase that connotes process."

The text cannot bear the weight of the Service's argument. We agree with the Sixth Circuit that section 6707A is better understood to describe the "types" of transactions that are subject to

penalties for non-reporting. *See Mann*, 27 F.4th at 1146 (alteration adopted) (quoting 26 U.S.C. § 6707A(c)(1)). The phrase highlighted by the Service defines *which* transactions are reportable: transactions that are "determined under" Treasury regulations issued under section 6011. After all, section 6707A is a definitional provision. The phrase "determined under" can be fairly read to allow the Service to define the *substance* of a reportable transaction through regulations issued under the Service's section 6011 authority. *See id.*; *Green Valley*, 2022 WL 16834499, at *12; *cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2117 (2018) (the phrase "under" tied a stop-time rule "to the *substantive* time-and-place requirements mandated by" statute (emphasis added)). But an indirect series of cross-references hardly suffices as the "express" indication necessary to supplant the baseline *procedures* of the Administrative Procedure Act. *See Marcello*, 349 U.S. at 310; *Mann*, 27 F.4th at 1147 ("Potential inferences layered on top of conjectural implications do not suffice.").

The Service does not offer any example of the phrase "under regulations" being interpreted in the manner that it urges. That the Service's textual argument hinges on the prepositions "as" and "under" only highlights the lack of any explicit reference to notice-and-comment procedures in section 6707A. And the cross-referenced section 6011 of the Revenue Code instructs that the Service shall "prescribe[]" "regulations"—not issue notices—to effect its ends. *See* 26 U.S.C. § 6011(a). Congress also declined the opportunity to adopt the notice-based process provided in the 2003 Treasury regulation, which authorized listing "by notice." *See* Treas. Reg. § 1.6011-4(b)(2). Although Congress codified other portions of the

regulation, it did not adopt the Treasury's listing process. That silence is the opposite of an express statement. *See Marcello*, 349 U.S. at 310; *see also Green Valley*, 2022 WL 16834499, at *24 (Toro, J., concurring) ("[I]t seems to me difficult to conclude that Congress incorporated in section 6707A(c) the process set in the 2003 regulation when Congress seems to have gone out of its way to exclude the process-related words of the regulation."). Section 6707A does not expressly exempt the Service from notice and comment when designating listed transactions.

The Service further argues that holding that Congress did not authorize notice-based listing would eliminate every listed transaction to date. According to the Service, it would be absurd for Congress to "invalidate *sub silentio* each and every one of the listed transactions already identified" in the 2004 Act, which provided penalties to strengthen the listing regime. But our holding does not necessarily compel such a result.

Other listed transactions were issued in a different regulatory context. As we have explained, the pre-2004 listed transactions—that is, 28 of the 34 existing listed transactions—were *not* backed by statutory penalties at the time of their issuance. And "penalties and criminal sanctions" are what render a listing notice a "legislative" rule subject to notice and comment to begin with. *See Mann*, 27 F.4th at 1143. Indeed, the judges of the United States Tax Court have suggested that section 6707A might be read to ratify the *substance* of existing, pre-2004 listed transactions, without exempting the Service from *prospective* notice-and-comment

procedures after statutory penalties were enacted. *See Green Valley*, 2022 WL 16834499, at ⋆19 n.5 (Pugh, J., concurring). But to be clear, we do not purport to rule on the validity of any listed transaction not before us. Our decision is specific to Notice 2017-10. Because the notice was a legislative rule and Congress did not expressly exempt the Service from notice-and-comment rulemaking, Notice 2017-10 is not binding on Green Rock.

## IV. CONCLUSION

We **AFFIRM** the order setting aside Notice 2017-10 with respect to Green Rock.

23-11041            Jordan, J., Concurring                    1

JORDAN, Circuit Judge, Concurring in Part and Concurring in the Judgment.

I join Parts I and II of the court's opinion and concur in the judgment as to Part III.

As the court explains, Congress amended 26 U.S.C. § 170(h) in 2022 to provide that syndicates would no longer be allowed to write off easement donations at inflated valuations. This change effectively eliminated, on a going-forward basis, the deductions that Notice 2017-10 would have made subject to disclosure.

Given this legislative development, there is not much need for a broad ruling in this appeal. I would therefore affirm the summary judgment in favor of Green Rock on a more narrow ground—that even if the IRS is correct that "(1) the 2003 regulation established procedures for identifying listed transactions and (2) Congress adopted those procedures by reference when enacting [26 U.S.C. §] 6707A(c), the [IRS] still would not prevail because the procedures reflected in the 2003 regulation are not, by their terms, inconsistent with the APA. Put another way, the [IRS] could have followed both the procedures set forth in the 2003 regulation and the APA when issuing Notice 2017-10." *Green Valley Invs., LLC v. Comm'r*, 159 T.C. No. 5, 2022 WL 16834499, *20 (T.C. 2022) (en banc) (Toro, J., concurring). *See also Green Rock, LLC v. IRS*, 654 F. Supp. 3d 1249, 1254 (N.D. Ala. 2023) ("The court is also persuaded by Judges Pugh['s] and Toro's reasoning in *Green Valley* that the language in [the regulation] permitting issuance of listing notices 'by notice' does not irreconcilably conflict with the [APA]'s notice-and-

2                          Jordan, J., Concurring                      23-11041

comment requirement."). "Where there are two acts upon the same subject, effect should be given to both if possible," *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936), and in my view that is the case here.