## Case No. 11,877.

### ROBACK v. TAYLOR.

[2 Bond, 36;[1] 14 Pittsb. Leg. J. 137; 4 Int. Rev. Rec. 170.]

Circuit Court, S. D. Ohio. Oct. Term, 1866.

INTERNAL REVENUE—FEDERAL JURISDICTION—ILLEGAL TAX—REMEDY—CONSTITUTIONAL LAW.

1. A court of the United States has no jurisdiction in case of a bill by a citizen of the state in which the bill is filed, to restrain a collector of internal revenue from the collection of an alleged illegal income tax.

2. The only remedy given by law is by appeal to the district assessor; and failing thus to obtain redress, by appeal to the commissioner of internal revenue.

3. The provision of the constitution of the United States, declaring that the judicial power should extend to all cases arising under the laws of the United States, is not a self-executing power, and does not vest the courts with jurisdiction without the action of congress for that purpose.

In equity.

Caldwell & Coppock, for complainant.
R. M. Corwine, for defendant.

LEAVITT, District Judge. This is a bill in equity, in which the complainant, Charles W. Roback, a citizen of the state of Ohio, avers, in substance, that for ten years prior to the autumn of 1865, he had been largely and successfully engaged in the manufacture and sale of medicines in the city of Cincinnati; that in the prosecution of that business he had devoted much time and attention, and invested some $60,000 of capital; that in the fall of 1865 he retired from it, and sold the good will of the same for $55,000; that after such sale, the assessor for the district under the internal revenue act of the United States, charged and returned the proceeds of said sale as part of the complainant's income for the year 1865; and that the defendant, R. M. W. Taylor, collector of internal revenue for the Second collection district of Ohio, to whom the return of the assessor was made, threatens, and is about to proceed to collect a tax of $5,500 by distraint. The bill then avers that the return and assessment of said sum as income tax is unjust and contrary to law; and prays that the said collector and all others may be perpetually enjoined from the collection thereof, and that upon final hearing, the same may be decreed to be illegal and void. On the 5th of August last, Mr.

1 [Reported by Lewis H. Bond, Esq., and here-reprinted by permission.]

Justice Swayne granted an injunction, to continue "until further hearing at the next term of the court." It may be proper to here state that the learned judge, in making the order for an injunction, intimated a strong doubt as to the jurisdiction of the court on the case made in the bill, but thought it due the complainant to restrain further proceedings for enforcing the collection of the alleged illegal tax until the case could be more fully heard.

A motion is now made by the district attorney of the United States, in behalf of the present incumbent of the office of collector for the Second collection district, to dissolve the injunction, on the ground of a want of jurisdiction in this court to entertain the case. This motion necessarily precludes all inquiry as to the legality of the tax assessed against the complainant. If the court has no jurisdiction, whatever may be its conviction upon the question of the legality of the tax, it has no power to grant the relief prayed for in the bill; and the injunction must necessarily be dissolved. The question thus presented is important in its character, but in my judgment not difficult of solution. It arises under a statute of recent enactment, and upon the points for decision the court has not the aid of any prior judicial action. They must be decided, therefore, in the light of general and well-settled principles, and not upon the authority of precedents having a direct application to the case. I shall be very brief in stating the grounds on which I have attained the conclusion that the court has no jurisdiction to grant the relief prayed for.

It will readily be conceded that jurisdiction can not be sustained from the citizenship of the parties. From the averment of the bill it appears that both the complainant and the defendant are citizens of Ohio. It is not, therefore, a case of controversy, in the words of the constitution, "between citizens of different states." It is insisted, however, that the jurisdiction vests by force of that clause of the second section of the third article of the constitution, which declares that "the judicial power shall extend to all cases in law or equity arising under this constitution, the laws of the United States, and treaties made or which shall be made under their authority." The argument is that as this case arises under and involves a construction of a law of the United States, the clause just quoted vests jurisdiction in the courts without reference to the citizenship of the parties.

There is, in my judgment, a conclusive argument against the tenability of this position. No case has been referred to, and it is believed there is no one in which it has been sustained by the supreme court, or any of the courts of the United States. The clause of the constitution relied on as conferring jurisdiction in cases arising under the laws of the United States, does not import a self-executing power. It belongs clearly to that class of powers of which there are many in the constitution, which are dormant and inoperative until vitality and vigor are imparted to them by the action of the legislative department of the government. I will not stop to designate those provisions of the constitution to which this principle applies. Now it may be conceded that, in the case before the court, the question whether, from the facts set forth in the bill, the income tax assessed and charged against the complainant is legal or illegal, depends upon the construction to be given to a clause in an internal revenue statute enacted by congress, and may be said properly to arise under a law of the United States. But we look in vain for any statutory provision declaring what court shall have jurisdiction, or how jurisdiction shall be exercised, in a case of an alleged grievance or injury arising from the error or malfeasance of any of the officials charged with the execution of the acts of congress for the assessment and collection of internal revenue. Until congress shall designate the court in which jurisdiction shall vest, and shall declare in what manner it shal be exercised, the constitutional provision cited can not be operative. There are two courts of the United States inferior to the supreme court, namely, the circuit court and district court, created by the legislation of congress, and possessing only such powers and jurisdiction as shall be meted out and defined by law. Now, it may be pertinently asked, which of the two courts named, in the absence of any legislative provision on the subject, shall entertain the jurisdiction invoked in this case, and by what form or proceeding shall the redress sought for be obtained? This uncertainty must be fatal to the exercise of jurisdiction by either of those courts, unless it can be based on some other foundation than that claimed in the argument of counsel.

There can be no question that it is within the constitutional competency of congress to vest the jurisdiction either in the circuit or district court, of hearing and deciding all cases of alleged illegal and wrongful acts arising from the execution of the internal revenue laws. But, for reasons which they doubtless deemed sufficient, they have carefully avoided the investure of such jurisdiction in either of said courts. From the structure of the laws referred to, the implication is exceedingly strong that their framers did not intend there should be any interference by the judicial department which, in its operation, should obstruct or embarrass their prompt execution. This conclusion is irresistible from a reference to these laws. Congress, however, has not left those aggrieved by the wrongs or mistakes of revenue officials without the means of obtaining redress. But it is the plain policy of the law that the remedy is not to be by a resort to

courts, 'but to other means pointed out by law. I will not stop to point out all the provisions of the statutes which justify this conclusion. By section 113 of the act of June 30, 1864 [13 Stat. 279], in force when the alleged illegal income tax was assessed against the complainant, it is made the duty of the proper assistant assessor to assess and make returns of all incomes subject to taxation. Of this assessment public notice is to be given; and it is provided "that every person feeling aggrieved by the decision of the assistant assessor in such cases, may appeal to the assessor of the district, and his decision thereon shall be final." The right of appeal thus granted, seems, in the opinion of the law-making power, to have been ample for the security of the tax-payer against the errors and wrongs of the assistant assessor. But this is not the only provision by which such errors or wrongs may be finally remedied. Although it is expressly declared that the decision of the district assessor shall be final, an appeal lies to another and higher official. By section 44 of the act it is provided "that the commissioner of internal revenue, subject to the regulations prescribed by the secretary of the treasury, shall be, and he is hereby authorized, on appeals to him made, to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and all duties that shall appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected," etc. The power thus vested in the commissioner of revenue is to be exercised under the supervision of the secretary of the treasury, to whom, practically, there is an appeal from the commissioner. And I need hardly add, if the rights of the party aggrieved are not secured by these means, as a final resort, there is an appeal to congress, whose power to afford redress is unquestionable. The provisions of the statute referred to seem clearly to sustain the proposition that it was intended by congress that wrongs and grievances occurring under the internal revenue act should be investigated and passed upon, not by the courts, but by the officials immediately charged with their execution. And it is not for this court to pronounce upon the justice or policy thus sanctioned by the law-making power. The internal revenue laws originated in a great national emergency, and were necessarily so framed as to ensure their prompt execution. That they are harsh in some of their provisions, and may develop in their execution cases of official malfeasance and oppression, is not doubted. The remedy for such results is with the legislative, and not the judicial department, unless the power is expressly conferred on the latter. The courts of the United States are courts of limited jurisdiction, and can exercise such powers only as are expressly granted by law, or clearly implied from the objects of their creation.

It may perhaps be insisted, though it was not urged in the argument, that if the jurisdiction claimed in this case does not exist under the clause of the constitution quoted, it may be exercised by the circuit courts, under the general chancery powers vested in them by the constitution and laws. These courts undoubtedly possess an extensive jurisdiction under this head. Without considering at length the source and extent of this jurisdiction, it may be affirmed as a clear proposition, that the case made in the complainant's bill is not one that brings it within the scope of the general chancery power of this court. There is no averment in the bill that the complainant will suffer irreparable injury from the collection of the alleged illegal income tax. Nor is it averred that he was without a remedy by law. As a basis for the proper action of a court of chancery, it must appear that he has appealed to the proper district assessor, under the section of the statute before cited; that such appeal has not resulted in the redress of the wrong complained of; and that he is wholly without a remedy, except by the interposition of a court of chancery. I do not say, if the bill had been so framed, a proper case for the action of a court of chancery would be presented. But it is clear that without the averment of irreparable injury, and that all the means of redress secured by law had been unavailingly resorted to, there would be no sufficient ground for the interposition of a court of equity. The court has no jurisdiction, and the injunction must be dissolved.