(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CIC SERVICES, LLC *v.* INTERNAL REVENUE SERVICE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 19–930. Argued December 1, 2020—Decided May 17, 2021

Internal Revenue Service (IRS) Notice 2016–66 requires taxpayers and "material advisors" like petitioner CIC to report information about certain insurance agreements called micro-captive transactions. The consequences for noncompliance include both civil tax penalties and criminal prosecution. Prior to the Notice's first reporting deadline, CIC filed a complaint challenging the Notice as invalid under the Administrative Procedure Act and asking the District Court to grant injunctive relief setting the Notice aside. The District Court dismissed the action as barred by the Anti-Injunction Act, which generally requires those contesting a tax's validity to pay the tax prior to filing a legal challenge. A divided panel of the Sixth Circuit affirmed.

*Held*: A suit to enjoin Notice 2016–66 does not trigger the Anti-Injunction Act even though a violation of the Notice may result in a tax penalty. Pp. 5–16.

(a) The Anti-Injunction Act, 26 U. S. C. §7421(a), provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." Absent the tax penalty, this case would be easy: the Anti-Injunction Act would pose no barrier. A suit to enjoin a requirement to report information is not an action to restrain the "assessment or collection" of a tax, even if the information will help the IRS collect future tax revenue. See *Direct Marketing Assn.* v. *Brohl*, 575 U. S. 1, 9–10. The addition of a tax penalty complicates matters, but it does not ultimately change the answer. Under the Anti-Injunction Act, a "suit['s] purpose" depends on the action's objective purpose, *i.e.*, the relief the suit requests. *Alexander* v. *"Americans United" Inc.*, 416 U. S. 752, 761. And CIC's complaint seeks to set aside the Notice itself, not the tax penalty that may follow

the Notice's breach. The Government insists that no real difference exists between a suit to invalidate the Notice and one to preclude the tax penalty. But three aspects of the regulatory scheme here refute the idea that this is a tax action in disguise. First, the Notice imposes affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty. Second, it is hard to characterize CIC's suit as one to enjoin a tax when CIC stands nowhere near the cusp of tax liability; to owe any tax, CIC would have to first violate the Notice, the IRS would then have to find noncompliance, and the IRS would then have to exercise its discretion to levy a tax penalty. Third, the presence of criminal penalties forces CIC to bring an action in just this form, with the requested relief framed in just this manner. The Government's proposed alternative procedure—having a party like CIC disobey the Notice and pay the resulting tax penalty before bringing a suit for a refund—would risk criminal punishment. All of these facts, taken together, show that CIC's suit targets the Notice, not the downstream tax penalty. Thus, the Anti-Injunction Act imposes no bar. Pp. 5–13.

(b) Allowing CIC's suit to proceed will not open the floodgates to pre-enforcement tax litigation. When taxpayers challenge ordinary taxes, assessed on earning income, or selling stock, or entering into a business transaction, the underlying activity is legal, and the sole target for an injunction is the command to pay a tax. In that scenario, the Anti-Injunction Act will always bar pre-enforcement review. And the analysis is the same for a challenge to a so-called regulatory tax—that is, a tax designed mainly to influence private conduct, rather than to raise revenue. The Anti-Injunction Act draws no distinction between regulatory and revenue-raising tax laws, *Bob Jones Univ.* v. *Simon*, 416 U. S. 725, 743, and the Anti-Injunction Act kicks in even if a plaintiff's true objection is to a regulatory tax's regulatory effect. By contrast, CIC's suit targets neither a regulatory tax nor a revenue-raising one; CIC's action challenges a reporting mandate separate from any tax. Because the IRS chose to address its concern about micro-captive agreements by imposing a reporting requirement rather than a tax, suits to enjoin that requirement fall outside the Anti-Injunction Act's domain. Pp. 13–15.

925 F. 3d 247, reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., and KAVANAUGH, J., filed concurring opinions.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 19–930

---

## CIC SERVICES, LLC, PETITIONER *v.* INTERNAL REVENUE SERVICE, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[May 17, 2021]

JUSTICE KAGAN delivered the opinion of the Court.

The Anti-Injunction Act, 26 U. S. C. §7421(a), bars any "suit for the purpose of restraining the assessment or collection of any tax." The question here is whether the Act prohibits a suit seeking to set aside an information-reporting requirement that is backed by both civil tax penalties and criminal penalties. We hold that the Act does not preclude the suit.

I

Americans have never had much enthusiasm for paying taxes. The Nation's first income taxes—adopted to finance the Civil War—met with considerable (one might even say "taxing") legal resistance. See Hickman & Kerska, Restoring the Lost Anti-Injunction Act, 103 Va. L. Rev. 1683, 1723–1725 (2017). Some taxpayers, alleging the taxes illegal, sought to enjoin collection efforts. And some courts granted the requested relief. See, *e.g.*, *Roback* v. *Taylor*, 20 F. Cas. 852, 854 (No. 11,877) (CC SD Ohio 1866); *Bank for Savings* v. *Collector*, 3 Wall. 495 (1866). Those rulings disrupted the flow of revenue to the Federal Government. As one late-19th century treatise writer described the problem,

"improvident employment of the writ of injunction" threatened to "seriously embarrass" tax-dependent "operations of the government."  T. Cooley, Law of Taxation 536–537 (2d ed. 1886).

Congress responded by enacting the Anti-Injunction Act. See Act of Mar. 2, 1867, §10, 14 Stat. 475.  In its current form (differing little from the original), the Act provides: "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."  26 U. S. C. §7421(a).  The Act, we have stated, "protects the [Federal] Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes."  *National Federation of Independent Business* v. *Sebelius*, 567 U. S. 519, 543 (2012) (*NFIB*).  Because of the Act, a person can typically challenge a federal tax only after he pays it, by suing for a refund.  See *ibid.*

In an ordinary Anti-Injunction Act case, that short primer on the statute would naturally bring us to a description of the tax under dispute.  But describing the tax implicated here will have to wait.  For that tax—the thing that raises the Anti-Injunction Act question—comes into play only at the back end of a complex information-reporting scheme. The reporting scheme itself is where we must begin.

As every taxpayer knows, the Internal Revenue Service (IRS) has broad power to require the submission of tax-related information that it believes helpful in assessing and collecting taxes.  See §6011(a).  Those reporting rules may apply not just to taxpayers but also to "material advisors"— individuals or entities that earn income from providing taxpayers with certain kinds of "aid, assistance, or advice." §6111(b)(1)(A); see §6111(a).  This case starts with requirements that taxpayers and material advisors provide detailed information about what the Internal Revenue Code calls "reportable transaction[s]."  §6707A(c)(1).  The Code describes those transactions simply as ones that "hav[e] a

potential for tax avoidance or evasion." *Ibid.* Rather than give further specifics, the Code delegates to the Secretary of the Treasury, acting through the IRS, the task of identifying particular transactions with the requisite risk of tax abuse. See §§6011, 6707A(c)(1).

Using that authority, the IRS determined that so-called micro-captive transactions must be reported because of their potential for tax evasion. A micro-captive transaction is typically an insurance agreement between a parent company and a "captive" insurer under its control. The Code provides the parties to such an agreement with tax advantages. The insured party can deduct its premium payments as business expenses. See §162(a). And the insurer can exclude up to $2.2 million of those premiums from its own taxable income, under a tax break for small insurance companies. See §831(b). The result is that the money does not get taxed at all. That much, for better or worse, is a congressional choice. But no tax benefit should accrue if the money is not really for insurance—if the insurance contract is a sham, which the affiliated companies have entered into only to escape tax liability. And according to the IRS, some micro-captive transactions are of that kind. So the IRS issued Notice 2016–66 identifying certain micro-captive agreements as reportable transactions. See 2016–47 Cum. Bull. 745. That Notice compels taxpayers and material advisors associated with such an agreement to (among other things) "describe the transaction in sufficient detail for the IRS to be able to understand [its] tax structure." *Id.*, at 748. With that information, the IRS can check for facts—like coverage for an "implausible risk" or premiums that "significantly exceed" prevailing rates—suggesting that the taxpayer is not entitled to the tax benefit it claims. *Id.,* at 745–746.

Noncompliance with Notice 2016–66 subjects a taxpayer or material advisor to stiff penalties—at last bringing us to the tax involved in this case, as well as to non-tax criminal

consequences. By statutory provision, all failures to supply required information on reportable transactions, including the micro-captive transactions specified in the Notice, are punishable by civil monetary penalties—$50,000 for advisors and up to that amount (depending on the amount of tax gain realized) for taxpayers. See §§6707(b), 6707A(b). In addition, an advisor may incur a daily $10,000 penalty for failing to furnish, on request, a list of the people it advised on a reportable transaction. See §§6708(a), 6112(a). And critically here, all those penalties are "deemed" to be "tax[es]" for purposes of the Code—including the Anti-Injunction Act. §6671(a). So, again, the civil penalties for violating Notice 2016–66 are *tax* penalties, and must be treated as such. But no sooner do we find the tax appended to the Notice's reporting scheme than we encounter something else. Under the Code, any person who "willfully" breaches an IRS reporting requirement is also subject to criminal penalties. §7203. Such a violation is a misdemeanor, punishable by fines and up to one year in prison. And, unsurprisingly, that criminal liability is not "deemed" a tax.

This suit challenges the lawfulness of Notice 2016–66. The petitioner is CIC Services, a material advisor to taxpayers participating in micro-captive transactions. It brought this action before the Notice's first reporting date, rather than after a reporting violation, let alone payment of penalty. (As far as we know, CIC has still not committed a violation, instead complying with the Notice while pressing this suit.) CIC's complaint mainly asserts that the IRS violated the Administrative Procedure Act (APA) by issuing the Notice without notice-and-comment procedures. The complaint also alleges that the Notice is arbitrary and capricious under the APA because it imposes new reporting requirements without proven need. So the complaint asks the court to "set[ ] aside IRS Notice 2016–66"—more specifically, to "enjoin the enforcement of Notice 2016–66 as an

unlawful IRS rule" and to "declar[e] that Notice 2016–66 is unlawful." Complaint in No. 17–CV–110 (ED Tenn., Mar. 27, 2017), Doc. 1, pp. 2, 16 (Complaint).

But the suit has not yet proceeded to the merits. The Government moved to dismiss the action based on the Anti-Injunction Act, arguing that CIC's "requested relief would prevent the IRS from assessing a tax penalty against material advisors" that disregard the Notice's reporting requirements. Motion to Dismiss in No. 17–cv–110 (ED Tenn., May 30, 2017), Doc. 25–1, p. 9. In the Government's view, the way for CIC to bring its claims is to disobey the Notice and then sue for a refund of any resulting tax penalty. The District Court agreed. It reasoned that CIC's suit sought "to restrain the IRS's assessment or collection" of the tax penalty that could be imposed for noncompliance. 2017 WL 5015510, *4 (ED Tenn., Nov. 2, 2017). The Court of Appeals for the Sixth Circuit affirmed in a divided decision. According to the majority, CIC's suit would "restrain (indeed eliminate)" the tax penalty by "invalidat[ing] the Notice, which is [that tax's] entire basis." 925 F. 3d 247, 255 (2019). Judge Nalbandian dissented. "[T]his is not," he wrote, "a dispute over taxes": "[A] suit to enjoin the enforcement of a *reporting requirement* is not" one to restrain a tax's collection. *Id.*, at 259–260. Under the majority's view, the dissent also objected, CIC could challenge the reporting scheme only by "violat[ing] the law" and risking "criminal prosecution." *Id.*, at 263. The Sixth Circuit denied a petition for rehearing en banc, over a dissent from seven judges.

We granted certiorari, 590 U. S. ___ (2020), and now reverse.

## II

### A

The issue here, most concretely stated, is whether the Anti-Injunction Act bars CIC's suit complaining that Notice 2016–66's reporting requirements violate the APA. Once

again, the Anti-Injunction Act provides, with exceptions not relevant here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." §7421(a). If CIC's suit is not for that purpose, it can go forward. If the suit is for that purpose, it must be dismissed. In that event, CIC could contest the legality of the reporting rules only by violating them and suing for a refund of a later tax penalty.

If that downstream tax penalty did not exist, this case would be a cinch: The Anti-Injunction Act would not apply and the suit could proceed. A reporting requirement is not a tax; and a suit brought to set aside such a rule is not one to enjoin a tax's assessment or collection. That is so even if the reporting rule will help the IRS bring in future tax revenue—here, by identifying sham insurance transactions. See *supra,* at 3. We said as much in *Direct Marketing Assn.* v. *Brohl*, 575 U. S. 1 (2015).[1] In that case, out-of-state retailers wanted to invalidate a Colorado law requiring them to report to the State's Department of Revenue any sale to a state resident on which they had not collected tax. We allowed the suit to proceed, explaining that a suit about reporting requirements is not about the "assessment" or "collection" of taxes. *Id.*, at 9–10. "Information gathering," we stated, is "a phase of tax administration procedure that occurs before assessment [or] collection." *Id.*, at 8. And it did not matter that the reporting requirements would "facilitate collection of taxes"—there, by identifying residents who owed sales taxes. *Id.*, at 12. The statute's limit on injunctions, we said, is "not keyed to all activities that may improve a State's ability to assess and collect taxes." *Id.*, at

─────────────

[1] *Direct Marketing* construed the Tax Injunction Act—a statute, "modeled on the Anti-Injunction Act," that limits injunctive relief against *state* tax collection. 575 U. S., at 8. This Court has "assume[d] that words used in both Acts," such as "assessment" and "collection," are "generally used in the same way." *Ibid.*

11. It is instead "keyed to the acts of assessment [and] collection themselves." *Id.,* at 12. That means a suit directed at ordinary reporting duties can go forward, unimpeded by the Anti-Injunction Act. On this much, even the Government agrees. See Brief for Respondents 27.

The complication here is that Notice 2016–66's reporting obligations (unlike those in *Direct Marketing*) are backed up by a statutory tax penalty. As earlier described, the Code provides that a taxpayer who violates a demand for information about a reportable transaction—including those specified in the Notice—is subject to civil monetary penalties. See *supra,* at 3–4. And the Code "deem[s]" those civil penalties to be "tax[es]" as the Anti-Injunction Act uses that term. §6671(a); see *NFIB*, 567 U. S., at 544 ("Congress can, of course," direct that a penalty "be treated as a tax for purposes of the Anti-Injunction Act"). The question thus becomes whether that added tax penalty changes the analysis. Does its presence—as a sanction for flouting the Notice—mean that CIC's suit is, as the Anti-Injunction Act provides, "for the purpose of restraining the assessment or collection of any tax"?

In considering a "suit['s] purpose," we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests. The parties agree on that interpretation, as both consistent with the Act's ordinary meaning and necessary for the Act's administration. See Brief for Respondents 40; Reply Brief 4; Tr. of Oral Arg. 15, 34. The purpose of a measure is "the end or aim to which [it] is directed." N. Webster, An American Dictionary of the English Language (rev. ed. 1844); see Webster's Third New International Dictionary 1847 (1976). And in this context, that aim is not best assessed by probing an individual taxpayer's innermost reasons for suing. Down that path lies too much potential for circumventing the Act. Instead, this Court has looked to the face of the taxpayer's complaint. See, *e.g., Bob Jones Univ.* v. *Simon,*

416 U. S. 725, 738 (1974). We have asked about what the
Government here calls "the substance of the suit"—the
claims brought and injuries alleged—to determine the
suit's object. Brief for Respondents 40. And most espe-
cially, we have looked to the "relief requested"—the thing
sought to be enjoined. *Alexander* v. *"Americans United"*
*Inc.*, 416 U. S. 752, 761 (1974); see *Bob Jones*, 416 U. S., at
732 ("[A] suit seeking [injunctive] relief" against a tax "falls
squarely within the literal scope of the Act"). The Anti-
Injunction Act kicks in when the target of a requested in-
junction is a tax obligation—or stated in the Act's language,
when that injunction runs against the "collection or assess-
ment of [a] tax."

It is in characterizing the purpose of CIC's suit that the
parties' disagreement emerges. Recall that CIC's complaint
avers that Notice 2016–66 violates the APA. See *supra,* at
4–5. And the complaint describes the relief requested as
"setting aside IRS Notice 2016–66," "enjoin[ing] the en-
forcement of Notice 2016–66 as an unlawful IRS rule," and
"declaring that Notice 2016–66 is unlawful." Complaint 2,
16. According to CIC, all of that reveals the suit's aim as
invalidating the Notice and thereby eliminating its onerous
reporting requirements—not as blocking the downstream
tax penalty that may sanction the Notice's breach. See Re-
ply Brief 6. By contrast, the Government contends that the
suit's purpose is to stop the collection of the tax itself. See
Brief for Respondents 12. In making that claim, the Gov-
ernment picks up on the word "enforcement" in CIC's re-
quest for relief: Because the Notice is enforced through tax
penalties, the Government claims, "enjoin[ing] the [No-
tice's] enforcement," as CIC wants, means preventing the
IRS from collecting taxes. *Id.*, at 23, 37–38. And even put-
ting aside that word, the Government insists that there is
no real difference between a suit to invalidate the Notice
and one to preclude the tax penalty. See *id.*, at 38; Tr. of
Oral Arg. 54–56. Avoiding the burdens of compliance with

the Notice and avoiding the tax that sanctions noncompliance, the Government asserts, are "two sides of the same coin." Brief for Respondents 37. The Government thus suggests that by framing this suit as an attack on the Notice, CIC is trying to "eva[de] the Anti-Injunction Act through artful pleading." *Id.*, at 38.

To begin with, we agree with CIC's reading of its complaint. The complaint contests the legality of Notice 2016–66, not of the statutory tax penalty that serves as one way to enforce it. CIC alleges that the Notice is procedurally and substantively flawed; it brings no legal claim against the separate statutory tax. And CIC's complaint asks for injunctive relief from the Notice's reporting rules, not from any impending or eventual tax obligation. Contra the Government's view, a request in an APA action to "enjoin the enforcement" of an IRS reporting rule is most naturally understood as a request to "set aside" that rule (as the complaint elsewhere says), not to block the application of a penalty that might be imposed for some yet-to-happen violation. 5 U. S. C. §706; Complaint 2, 9, 16. Indeed, CIC's complaint barely mentions that penalty. The complaint, and particularly its request for relief, sets out this suit's purpose as enjoining the Notice.

And we reject the Government's argument that an injunction against the Notice is the same as one against the tax penalty—just "two sides of the same coin." Brief for Respondents 37. If that view were right, of course, no amount of artful pleading would avail: CIC's suit targeting the Notice would then in fact target the tax, and the Anti-Injunction Act would apply. But the Government's take is wrong. Three aspects of the regulatory scheme here, taken in combination, refute the idea that this is a tax action in disguise. They show that in addressing Notice 2016–66, this suit (and any resulting injunction) addresses something other than the tax penalty helping to back it up.

First, the Notice imposes affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty. As described earlier, the Notice levies no tax. Rather, it compels taxpayers and their material advisors to collect and submit detailed information about micro-captive transactions and their participants. See *supra,* at 3. And obeying that mandate is likely to involve significant time and expense. Here, for example, CIC estimates that it will have to spend "hundreds of hours of labor and in excess of $60,000 per year" to comply with the Notice. See Complaint ¶40. Costs of that kind may well exceed, or even dwarf, the tax penalties for a violation. So in bringing this suit, CIC challenges a regulatory mandate that (1) is not a tax and (2) entails compliance costs whose amount is not tied to, and often goes beyond, any tax. Simply stated, this suit attempts to get out from under the (non-tax) burdens of a (non-tax) reporting obligation. Of course, if the suit succeeds, CIC will never have to worry about the tax penalty; once the reporting duty disappears, the sanction becomes irrelevant. But that is the suit's after-effect, not its substance. The suit still targets the reporting mandates—the independently onerous reporting mandates—of the Notice itself.

Second and relatedly, the Notice's reporting rule and the statutory tax penalty are several steps removed from each other. Consider what has to happen before CIC owes taxes to the IRS. To start, CIC has to withhold required information about a micro-captive transaction that the Notice covers. (And note, for whatever it is worth, that CIC disclaims any intent to do so while the Notice remains the law. See Brief for Petitioner 29.) Next, the IRS must determine (often no small matter) that a violation of the Notice has in fact occurred. And finally, the IRS must make the—entirely discretionary—decision to impose a tax penalty. See §6707A(d). If and only if all those things occur does tax li-

ability attach. That threefold contingency matters in assessing whether the Anti-Injunction Act applies. Even the Government concedes that when there is "too attenuated a chain of connection" between an upstream duty and a "downstream tax," a court should not view a suit challenging the duty as aiming to "restrain the assessment or collection of a tax." Tr. of Oral Arg. 38–39.[2] That principle favors CIC here. CIC stands nowhere near the cusp of tax liability: Between the upstream Notice and the downstream tax, the river runs long. So it is again hard to characterize this suit's purpose as enjoining a tax.

Third, violation of the Notice is punishable not only by a tax, but by separate criminal penalties. As noted above, any "[w]illful failure" to comply with the Notice's reporting rules can lead to as much as a year in prison. §7203; see *supra,* at 3–4. That fact clinches the case for treating a suit brought to set aside the Notice as different from one brought to restrain its back-up tax. For the existence of criminal penalties explains why an entity like CIC must bring an action in just this form, framing its requested relief in just this way. Recall what the Government would

_____

[2] The Government's own example proves our point. Environmental Protection Agency (EPA) regulations governing the resale of diesel fuel are enforced in part through a penalty that Congress has deemed a tax, in just the way it has the penalty here. See §§6720A(a), 6671(a). The Government concedes that "a court might well conclude" that a suit to enjoin the enforcement of the EPA regulations is "not one 'for the purpose of restraining' tax assessment or collection, even if" a ruling for the plaintiff would "have an eventual downstream impact on the IRS's collection of the [tax] penalty." Brief for Respondents 44. But that example is no different from this case, save that here the IRS, not the EPA, administers the regulatory mandate. And that one variance should not matter. As explained above, an IRS reporting requirement absent a tax penalty no more triggers the Anti-Injunction Act than an EPA rule does. See *Direct Marketing Assn.* v. *Brohl*, 575 U. S. 1, 11–12 (2015); *supra,* at 6–7. So adding an identical tax penalty to each of those regulatory schemes should affect the Anti-Injunction Act analysis in the same way—which is to say, not at all.

have such a party do: disobey the Notice, pay a resulting tax penalty, and then bring a refund suit. See Brief for Respondents 16–17; *supra,* at 5. That approach—not the Anti-Injunction Act's familiar pay-now-sue-later procedure, but one with lawbreaking at the start—subjects the party to criminal punishment.[3] And that is not the kind of thing an ordinary person risks, even to contest the most burdensome regulation. So the criminal penalties here practically necessitate a pre-enforcement, rather than a refund, suit—if there is to be a suit at all. And so too, those penalties necessitate a suit aimed at eliminating the Notice, rather than the statutory tax penalty. Only an injunction against the Notice gives the taxpayer or advisor what it wants: relief from the obligation to report transactions. An injunction against the tax penalty would not do so. Because such an injunction would leave both the reporting duty and the criminal penalty untouched, the taxpayer or advisor would still have to accede to the Notice's demands on pain of prison time. Small wonder that CIC's complaint asks for an injunction against the Notice, not one against the tax penalty helping to enforce it. Contrary to the Government's assertion, those injunctions are not two sides of one coin.

For all these reasons, the purpose of CIC's suit is not to

───────────

[3] The Government suggests that criminal liability would not attach to a taxpayer or advisor who refuses to comply with the Notice out of a "good faith" objection to its validity. Brief for Respondents 46. It is easy to see why the Government wishes that were true: In none of our Anti-Injunction Act cases has postponing a taxpayer's suit until after payment exposed him to criminal penalties—because in no other case has that approach required a taxpayer to break a law in the first instance. But this Court's precedent precludes the Government's effort to erase the criminal penalties from this case. We have held in no uncertain terms that "a defendant's views about the validity" of a tax provision—even if held "in good faith"—do not "negate[ ] willfulness or provide[ ] a defense to criminal prosecution." *Cheek* v. *United States*, 498 U. S. 192, 204, 206 (1991). So in failing to report transactions as the Notice requires, an advisor like CIC would risk criminal punishment.

"restrain[ ] the assessment or collection of [a] tax."
§7421(a). The complaint, and particularly the relief sought,
targets the Notice's reporting rule, asking that it be set
aside as a violation of the APA. And nothing in that request
smacks of artful pleading. To the contrary. That the Notice
imposes an affirmative duty independent of the tax, entail-
ing its own substantial costs; that the Notice and tax may
remain forever divorced, depending on both CIC's and the
IRS's choices; that not only the tax but also criminal penal-
ties backstop the Notice—these facts, when combined, read-
ily explain why CIC's suit targets the upstream reporting
mandate, not the downstream tax. And because that is the
suit's aim, the Anti-Injunction Act imposes no bar.

## B

The Government worries that a ruling for CIC will enfee-
ble the Anti-Injunction Act. If CIC can bring this suit now,
the Government claims, a wave of pre-enforcement actions
will follow. Canny plaintiffs will assert non-tax reasons (in-
cluding objections to regulatory demands) for contesting the
imposition of taxes. See Brief for Respondents 32, 38. And
in that way, taxpayers will obtain just what the Anti-
Injunction Act is meant to foreclose—orders "preemptively
shield[ing]" their activities or transactions from "tax conse-
quences." *Id.*, at 13. More and more, the Government
warns, tax litigation will shift from refund actions to pre-
enforcement suits. And the IRS's ability to assess and col-
lect taxes will decline in proportion.

The Government, however, much overstates the possible
consequences of today's ruling. As we have explained, this
suit falls outside the Anti-Injunction Act because the in-
junction it requests does not run against a tax at all. See
*supra,* at 9–13. The suit contests, and seeks relief from, a
separate legal mandate; the tax appears on the scene—as
criminal penalties do too—only to sanction that mandate's
violation. Or as Judge Nalbandian put the point below:

"[T]his is not a dispute over taxes."  925 F. 3d, at 259; see *supra,* at 5.  By contrast, the kind of case the Government invokes in making its floodgates claim is a conflict over taxes, whether on earning income, or selling stock, or entering into a business transaction.  In such a case, the legal rule at issue is a tax provision.  The tax does not backstop the violation of another law that independently prohibits or commands an action.  Instead, the tax imposes a cost on perfectly legal behavior.  So there is no target for an injunction other than the command to pay the tax; there is no nontax legal obligation to restrain.  Given that fact, the Anti-Injunction Act bars pre-enforcement review, prohibiting a taxpayer from bringing (as the Government fears) a "preemptive[ ]" suit to foreclose tax liability.  Brief for Respondents 13.  And it does so always—whatever the taxpayer's subjective reason for contesting the tax at issue.  If the dispute is about a tax rule—as it is in the run-of-the-mine suits the Government raises—the sole recourse is to pay the tax and seek a refund.

That is just as true when the tax in question is a so-called regulatory tax—that is, a tax designed mainly to influence private conduct, rather than to raise revenue.  This Court has long since "abandoned the view that bright-line distinctions exist between regulatory and revenue-raising taxes." *Bob Jones*, 416 U. S., at 743, n. 17; see *id.*, at 741, n. 12; *Sonzinsky* v. *United States*, 300 U. S. 506, 513 (1937) ("Every tax is in some measure regulatory").  And for just as long, we have rejected the view that regulatory tax cases have a special pass from the Anti-Injunction Act.  A century ago, the Court in *Bailey* v. *George*, 259 U. S. 16 (1922), held that the Act barred a pre-enforcement suit challenging a tax intended to discourage the (then lawful) use of child labor.  Some 50 years later, the Court in *Bob Jones* and *Americans United* similarly held that the Act barred pre-enforcement suits challenging IRS decisions to revoke the

tax-exempt status of entities that had engaged in, respectively, discriminatory conduct and lobbying activity—conduct that was legal but disfavored for tax purposes. See 416 U. S., at 735; 416 U. S., at 755. In doing so, the Court made clear that the plaintiffs' reasons for suing did not matter: It was, for example, irrelevant that Bob Jones University objected to the IRS's "attempt to regulate the admissions policies of private universities." 416 U. S., at 739. Nor did it matter that the tax ruling was in truth an effort to change those policies. Regardless of those facts, the suits sought to prevent the levying of taxes, and so could not go forward. The Anti-Injunction Act, we said then and say again now, draws no distinction between regulatory and revenue-raising tax rules. It applies whenever a suit calls for enjoining the IRS's assessment and collection of taxes—of whatever kind.

What sets this suit apart is that it no more targets a regulatory tax than a revenue-raising one. One last time: CIC's action challenges, in both its substantive allegations and its request for an injunction, a regulatory mandate—a reporting requirement—separate from any tax. Or said otherwise, the suit targets not a regulatory tax, but instead a regulation that is not a tax. Here, the tax functions, alongside criminal penalties, only as a sanction for noncompliance with the reporting obligation. Had Congress, or the IRS acting through a delegation, imposed a tax on micro-captive transactions themselves—and had CIC then brought a pre-enforcement suit to prevent the IRS from applying that tax—the Anti-Injunction Act would have kicked in. Then, CIC would have had to pay the tax and seek a refund. But Congress and the IRS chose a different path. They imposed a non-tax, reporting obligation to address their concerns about micro-captive agreements. And by that choice, they took suits to enjoin their regulatory response outside the Anti-Injunction Act's domain.

## III

CIC's suit aims to enjoin a standalone reporting require-ment, whose violation may result in both tax penalties and criminal punishment.  That is not a suit "for the purpose of restraining the [IRS's] assessment or collection" of a tax, and so does not trigger the Anti-Injunction Act.  We reverse the judgment below and remand the case for further pro-ceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 19–930

CIC SERVICES, LLC, PETITIONER *v.* INTERNAL
REVENUE SERVICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[May 17, 2021]

JUSTICE SOTOMAYOR, concurring.

I concur because I agree that CIC Services, a material advisor to taxpayers engaged in micro-captive transactions, does not bring this suit "for the purpose of restraining the assessment or collection of any tax," 26 U. S. C. §7421(a), but rather for the purpose of avoiding the regulatory burdens imposed by Notice 2016–66 (Notice). The three factors identified by the majority, taken in combination, show that this suit falls outside the ambit of the Anti-Injunction Act (AIA): The Notice imposes substantial compliance costs that are unconnected to (and possibly far greater than) CIC Services' potential tax liability; the causal chain connecting the Notice's reporting requirement to any tax is attenuated; and the Notice is enforced by criminal as well as tax penalties. See *ante,* at 9–13.

I write separately to highlight that the answer might be different if CIC Services were a taxpayer instead of a tax advisor. Taxpayers who are subject to reporting requirements backed by tax penalties face a choice: (1) provide information about their own finances to the Internal Revenue Service (IRS), which may in turn use that information to calculate the taxpayers' liability more accurately, or (2) refuse to provide such information and pay a noncompliance penalty, which Congress has deemed a tax. For a given taxpayer, then, a tax on noncompliance may operate as a rough

substitute for the tax liability she has evaded by withholding required information. Moreover, compared with their tax advisors, taxpayers may incur less expense in collecting and reporting their own financial information. Such information, after all, is about those taxpayers' own activities and is likely to be in their possession. Hence, while it will often be correct to conclude that a tax advisor challenging an IRS reporting requirement is not doing so "for the purpose of restraining" a tax on noncompliance, the analysis may be different when it comes to taxpayers.

This case provides no occasion for the Court to inquire into the full quantity or variety of IRS reporting requirements that are backed by tax penalties, nor to predetermine whether the AIA would allow hypothetical taxpayers to challenge those requirements in court. Whether such suits may proceed will depend on a context-specific inquiry into "the relief the suit requests" and the "aspects of the regulatory scheme" at issue. *Ante,* at 7, 9. On that understanding, I concur.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–930

_____

## CIC SERVICES, LLC, PETITIONER *v.* INTERNAL REVENUE SERVICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[May 17, 2021]

JUSTICE KAVANAUGH, concurring.

I join the Court's opinion in full. I write separately to underscore what remains (and does not remain) of *Alexander* v. *"Americans United" Inc.*, 416 U. S. 752 (1974), and *Bob Jones Univ.* v. *Simon*, 416 U. S. 725 (1974), in the wake of the Court's decision today.

In *Americans United* and *Bob Jones*, this Court adopted a straightforward and broad rule for determining whether a pre-enforcement suit is barred by the Anti-Injunction Act. Under that rule, if a pre-enforcement suit would "necessarily preclude" the assessment or collection of a tax, that suit is barred by the Act and the taxpayer needs to bring a refund suit *after* paying the tax. *Bob Jones*, 416 U. S., at 732; see also *Americans United*, 416 U. S., at 760–761. In other words, *Americans United* and *Bob Jones* instruct courts to look to the *effects* of a suit. And if a pre-enforcement suit would have the effect of preventing the assessment or collection of a tax, then that suit is barred by the Anti-Injunction Act.

Many courts have taken *Americans United* and *Bob Jones* at their word. And the Sixth Circuit did so here. In this case, CIC challenged a regulation that was backed by tax penalties—more specifically, penalties that the Tax Code labels as "taxes" for purposes of the Anti-Injunction Act.

See 26 U. S. C. §6671(a).  Because invalidating the regula-
tion at issue would "necessarily preclude" the collection of
tax penalties (labeled as "taxes" by the Tax Code) stemming
from an individual's violation of that regulation, the Sixth
Circuit concluded that CIC's pre-enforcement suit was
barred by the Anti-Injunction Act under *Americans United*
and *Bob Jones*.  That was a reasonable conclusion to reach,
especially given that CIC's primary argument here is the
same basic argument that this Court rejected in both *Amer-
icans United* and *Bob Jones*.  Compare Brief for Respondent
in *Alexander* v. *"Americans United" Inc.*, O. T. 1973, No. 72–
1371, p. 25 (It "is clear that the 'purpose' of this law suit"
"is not to restrain the assessment or collection of any tax
but to challenge the constitutionality of an essentially reg-
ulatory Act of Congress"), with Brief for Petitioner 17 ("The
purpose of CIC's suit" "is to avoid the burdens of the report-
ing requirement—not to avoid or dispute any tax liability").

The Court today holds, however, that CIC's pre-enforce-
ment suit is not barred by the Anti-Injunction Act.  In so
holding, the Court in effect carves out a new exception to
*Americans United* and *Bob Jones* for pre-enforcement suits
challenging regulations backed by tax penalties.  I agree
with the Court's decision to narrow *Americans United* and
*Bob Jones* because the broad "effects" rule articulated in
those decisions is hard to square with the text of the Anti-
Injunction Act, which bars only a pre-enforcement "suit for
the purpose of restraining the assessment or collection of
any tax."  §7421(a).  Contrary to some sweeping language
in *Americans United* and *Bob Jones*, the Anti-Injunction
Act is best read as directing courts to look at the stated *ob-
ject* of a suit rather than the suit's downstream effects.  See
*ante,* at 7–8.  And for that reason, as the Court explains, the
text of the Anti-Injunction Act is best read as distinguishing
(i) pre-enforcement suits challenging the regulatory compo-
nent of a regulatory tax, which remain prohibited because

the requested relief necessarily runs against the assessment or collection of a tax, from (ii) pre-enforcement suits challenging a regulation backed by a tax penalty, which may proceed because the requested relief runs against an independent legal obligation.

In short, as I understand the Court's opinion today, the rule going forward is that pre-enforcement suits challenging regulatory taxes or traditional revenue-raising taxes are still ordinarily barred by the Anti-Injunction Act. But pre-enforcement suits challenging regulations backed by tax penalties are ordinarily not barred, even though those suits, if successful, would necessarily preclude the collection or assessment of what the Tax Code refers to as a tax.

With those observations, I join the Court's opinion in full.