**Harold W. LOWRIE, et al.,
Plaintiffs-Appellees,**

**v.**

**UNITED STATES of America; Internal Revenue Service; and Federal Bureau of Investigation; Defendants-Appellants,**

**State of Colorado, et al., Defendants.**

**No. 84–1838.**

United States Court of Appeals,
Tenth Circuit.

July 28, 1987.

David I. Pincus (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Carleton D. Powell, Tax Div., Dept. of Justice, Washington, D.C., and Robert N. Miller, U.S. Atty., Denver, Colo., of counsel, with him on the brief), for U.S., F.B.I., and I.R.S., defendants-appellants.

Rick Budd, of Drexler & Wald, Denver, Colo. (Dennis W. Hartley, of Hartley, Obernesser, Vaglia, Bailey & Robinson, Colorado Springs, Colo., with him on the brief), for plaintiffs-appellees.

Before McKAY, BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Harold W. Lowrie, and others, brought suit in the United States District Court for the District of Colorado seeking return of business records seized by certain of the defendants in a search and seizure which, according to the plaintiffs, was unconstitutional. In their complaint, the plaintiffs also sought return of all copies made of the records thus seized, and a permanent injunction barring any use by the defendants of the records, or copies thereof, in any investigation or proceeding against the plaintiffs. The action was brought pursuant to Fed.R.Crim.P. 41(e) with jurisdiction alleged under 28 U.S.C. §§ 1331 and 1651 (1982).[1] The named defendants were, *inter alia*, the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS), as well as certain state agencies and officials. The state and federal defendants filed motions to dismiss, which were denied. *See Lowrie v. United States*, 558 F.Supp. 1029 (D.Colo.1983).

---

1. Rule 41(e) allows a person aggrieved by an unlawful search and seizure to move the district court for the return of property so seized.

The case was tried on its merits before the Honorable John L. Kane, Jr., who, at the conclusion thereof, dismissed the action as it related to individual federal and state officials, but entered judgment against the FBI, the IRS, and the Colorado Department of Revenue and in connection therewith ordered that all records seized in the search, and any copies of such records, be returned to the plaintiffs.

The trial judge made no findings, as such, although the record does contain the statements of court and counsel when the judge announced his decision. In sum, the district judge found that though the search in question was conducted by state officials, it was a "federal search" because of the involvement of agents of the FBI, that there was probable cause for the search warrant which the state officials obtained from a state judge, but that the warrant lacked particularity, and was therefore a general warrant. He additionally held that the search itself exceeded the search authorized by the warrant and was a general exploratory search. The district judge also found that the records seized in the search were in the physical possession of certain state officials, and he ordered that the records be returned to plaintiffs. The state officials have apparently complied with that order, i.e., the records were returned. In any event, the present appeal is taken by the FBI and the IRS only.

▮ It is agreed that the FBI at an earlier point in time had in its possession copies of all records seized in the search. However, at the time of entry of judgment, the district judge found that the FBI no longer had any copies of the records in question, the copies having been inadvertently destroyed. Nevertheless, in its formal judgment, the district court ordered the FBI to return all copies of the records seized in the search. The record does not support the judgment thus entered against the FBI. As the present action was filed requesting a return of property under Rule 41(e), an order that the FBI return material which it does not have, nor does it have control over, cannot stand.

The IRS also had a copy of all records seized in the search, and such copies were in possession of the IRS as of the date of trial. The district court ordered IRS to return those copies to the plaintiffs, but stayed its order pending appeal. The district court refused to issue any injunction order which would enjoin the IRS from conducting an investigation in connection with its efforts to "collect taxes." The district court stated that its "only order is that the evidence illegally obtained shall be returned and the copies made thereof shall be returned as well."

A few background facts will place this matter in focus. The FBI and a Special Crime Attack Team (SCAT) of Arapahoe County, State of Colorado, were jointly investigating possible violations of both federal and state laws relating to narcotics, prostitution and tax evasion. During the course of this investigation an undercover FBI agent made contact with Harold W. Lowrie, the lead plaintiff in the present case. Lowrie, in his conversation with the undercover agent, told the latter that he, through some "shell" corporations, owned five Colorado liquor licenses. In this regard, Colorado statutory law limits liquor licenses to one license per individual. Lowrie, and his attorney, explained to the undercover agent just how Lowrie could operate five taverns, when the law provided that he could only operate one, i.e., through "shell" corporations, figurehead directors, shareholders who signed over their stock certificates to Lowrie, undated letters of resignation kept in Lowrie's attorney's office, financial affairs managed by separate management corporations, and the like.

Based on the information acquired by the undercover FBI agent, it was determined to obtain a search warrant and search Lowrie's offices, and those of his "shell" corporations, searching for business records which would establish the truth of Lowrie's claim that he was operating five taverns at one time. The federal authorities declined to participate in any request for a search warrant, since the possible criminal violations were state, and not federal. Accordingly, a detective on the SCAT team drafted an affidavit which he signed and in

which he sought warrants to search four of Lowrie's taverns, his attorney's office and the offices of the two management companies. The affidavit contained, *inter alia,* the results of the undercover FBI agent's meetings with Lowrie. Based on this affidavit, a Denver County judge issued seven search warrants authorizing a search of Lowrie's four taverns, his attorney's office, and the office of the two management companies.

The searches were conducted on January 27, 1981, by state officers, no federal officials being present. The searches were extensive and resulted in the seizure of voluminous business records. At some point after the searches were completed, the FBI examined the records seized by the state officers. The FBI thereafter advised the IRS that it might have an interest in these records as they might disclose "skimming." The IRS examined the seized records and made two microfilm copies, one of which it kept for its own purposes, the other copy being given the FBI. No indictments, be they state or federal, have ever been filed even to the present date, insofar as we are advised.

It was in this setting that on September 29, 1982, the plaintiffs instituted the present proceeding seeking return of records, copies thereof and an injunction forbidding their use in connection with any investigations or other proceedings.

The district court ordered IRS to return all copies of records seized in the search by state officials, but, at the same time, refused to "enjoin" IRS from investigating Lowrie, recognizing that 26 U.S.C. § 7421(a) (1982) precluded entry of such an order.[2] The district court reiterated its belief that the present proceeding was merely an effort to recover property under Rule

41(e), and nothing more. In so doing, we believe the district court oversimplified the matter and did not give full effect to 26 U.S.C. § 7421(a) (1982).

Section 7421(a) provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person...." That statute is sometimes referred to as the "Anti-Injunction Act," but we believe in reality it is broader than that. By way of illustration, the statute starts off with the phrase "no suit." The intent behind the statute is the protection of the government's need to assess and collect taxes as expeditiously as possible without preenforcement judicial interference and to require that disputed sums of taxes due be determined in suits for refund. *Bob Jones University v. Simon,* 416 U.S. 725, 736–37, 94 S.Ct. 2038, 2045–46, 40 L.Ed.2d 496 (1974); *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). A collateral objective is the protection of the collector from litigation pending a suit for refund. *Id.* at 8, 82 S.Ct. at 1129. The statute applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection. *See, e.g., Dickens v. United States,* 671 F.2d 969 (6th Cir.1982). Nor can one avoid the statute by raising constitutional claims. *Alexander v. Americans United, Inc.,* 416 U.S. 752, 759, 94 S.Ct. 2053, 2057, 40 L.Ed.2d 518 (1974). Exceptions to the Act are rare, and the exception noted in *Enochs, supra,* allows an injunction only where the taxpayer can show irreparable injury *and* it is clear that under no circumstance could the government ultimately prevail.[3]

**2.** Rule 41(e) provides that when a district court grants a motion for return of property the property shall be restored and the restored property "shall not be admissible in evidence at any hearing or trial." So, by ordering IRS to return copies of the records seized in the search, the district court also ordered, in effect, that such copies could not be used in any investigation or in any sort of hearing or trial.

**3.** It appears Lowrie could not meet the *Enochs* exception in this case. At the time plaintiffs initiated the proceeding, there was a substantial question as to whether the search warrant and subsequent search violated plaintiffs' fourth amendment rights. On appeal, the IRS raises several credible issues under which it might ultimately prevail. Thus plaintiffs' failure to show they were clearly, under all circumstances, entitled to relief precludes their invoking the *Enochs* exception.

At the hearing on the merits, the IRS advised the court that it was then presently involved in an investigation of Lowrie to determine whether there was any civil liability on his part for taxes due the United States. It is clear to us that the purpose behind Lowrie's suit, as it relates to IRS, is not one for the mere return of copies of records then in the possession of IRS. When Lowrie filed the suit 75% of the original records seized in the search had already been returned. Evidence adduced at trial established that the remaining original records were in the possession of state officials, and such have now been returned. In his brief in this court, at page 16, Lowrie concedes that he never did need the records, let alone copies of those records, in order to continue to conduct his various business enterprises, and he candidly admits that his purpose in seeking the return of the copies now held by IRS is to head off action against him, of whatever nature, by the IRS.[4] In our view, this brings the instant case squarely within the purview of the Act. The district court erred in failing to hold that the instant suit, as it relates to the IRS, is barred by the Act.[5]

The judgments against the FBI and the IRS are reversed and the case is remanded with directions that the district court dismiss Lowrie's suit against those two defendants.

---

**4.** Nor do any of the other plaintiffs pursuing this appeal argue they have any specialized need for the records or the copies.

**5.** In *Linn v. Chivatero,* 714 F.2d 1278 (5th Cir. 1983), the Fifth Circuit held that the Anti-Injunction Act did not bar a taxpayer's request of the IRS for the return of records, because in that case the request did not pertain to his "tax liability." In our case, it is quite clear that Lowrie's request for return of copies of records in the possession of IRS pertains to possible tax liability on his part. *See also, Cardwell v. Kurtz,* 765 F.2d 776 (9th Cir.1985).