**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

STANDARD INSURANCES, a Utah
corporation; STANDARD PLUMBING
SUPPLY, a Utah corporation; PLASTIC
SERVICES AND PRODUCTS, a Utah
limited liability company; THE REESE
FAMILY 101 TRUST, a Utah trust;
POLYMER COMPOUNDING, a Utah
limited liability company; STANDARD
LOGISTIC SERVICES, a Utah limited
liability company; REESE REAL ESTATE
& INVESTMENT, a Utah corporation;
RICHARD N. REESE FAMILY LIMITED
LIABILITY, a Utah limited liability
company; UD DESIGN, a Utah
corporation; AIRE-FLO HEATING & AIR
CONDITIONING, a Utah corporation;
KSR LEGACY INVESTMENT, a Utah
corporation; DA DI BATHWARE, a Utah
limited liability company; CLIFCO
SHEET METAL MANUFACTURING, a
Utah limited liability company;
REESESOURCE LEASING, a Utah
limited liability company; RICHARD N.
REESE, an individual; JILL  P. REESE, an
individual,

    Plaintiffs - Appellants,

v.

INTERNAL REVENUE SERVICE;
DEPARTMENT OF THE TREASURY;
UNITED STATES OF AMERICA,

    Defendants - Appellees.
_____

No. 24-4094

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:23-CV-00047-HCN)**

_____

Christopher A. Bates, Kirton McConkie, Salt Lake City, Utah (Justin W. Starr, James T. Burton and Joshua S. Rupp, Kirton McConkie, Salt Lake City, Utah, and S. Mark Barnes, Expert Tax Law, Salt Lake City, Utah, with him on the briefs) for Plaintiffs-Appellants.

Geoffrey J. Klimas (Francesca Ugolini with him on the brief), Attorneys, Tax Division, Department of Justice, Washington, D.C., for Defendants-Appellees.

_____

Before **HARTZ**, **TYMKOVICH**, and **FEDERICO**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

Standard Insurances is a "micro-captive insurance company" located in Utah. As a micro-captive, it provides insurance (and federal tax benefits) to a parent company and sister-subsidiary companies. The Plaintiffs-Appellants in this case are Standard and entities insured by Standard. Their suit arose after an audit when the Internal Revenue Service determined that Standard was not an eligible captive insurance company. As a result of the determination, the IRS issued notices of a tax deficiency to Standard and its insureds (together, Standard).[1] Standard challenged the IRS's actions in federal court, claiming that the IRS improperly denied it

_____

[1] We refer to the Appellants collectively as Standard unless it is helpful to distinguish between Standard Insurances and its insureds, in which case we name and discuss them separately.

eligibility as a captive insurance company. It also claimed that the IRS wrongfully obtained internal documents during the course of the audit.

The district court dismissed the complaint for lack of jurisdiction because the claims were prohibited by the Declaratory Judgment Act and the Tax Anti-Injunction Act. Under those statutes, any challenge restraining the assessment or collection of a federal tax is prohibited in federal court. Instead, a taxpayer must challenge the action in tax court or in a refund proceeding after the tax is paid.

We agree with the district court's dismissal and **AFFIRM**. Standard's complaint asked the district court to restrain the assessment and collection of its deficiency taxes. The Declaratory Judgment Act and Tax Anti-Injunction Act apply to bar its claims.

## I.    Background

### A.    Factual History

Standard Insurances Company is a Utah-based micro-captive insurance company that provides insurance to the other appellants. A captive insurance company is an insurance company owned by a parent entity that provides insurance to it; a "micro-captive" insurance company is one that receives less than $2.2 million in insurance premiums per year. 26 U.S.C. § 831(b). The benefits of a micro-captive insurance company are two-fold: (1) the micro-captive company is entitled to exclude premium payments made by insured companies from its taxable income, and (2) the insured companies are entitled to deduct premium payments as business expenses. *See id*. §§ 831(b), 162(a).

3

In 2016, the IRS issued a policy statement contained in Notice 2016-66. That notice required micro-captive insurance companies to report certain transactions and disclose related information to the IRS because micro-captive insurance transactions "ha[ve] a potential for tax avoidance or evasion." I.R.S. Notice 2016-66, 2016-47 I.R.B. 745. Standard began filing the necessary reports to the IRS. In September 2022, the IRS commenced an audit of Standard. After completing the audit, the IRS issued Deficiency Notices and made corresponding tax adjustments to Standard. According to the Notices, Standard was not a legitimate micro-captive insurance company for the purpose of § 831(b), its transactions "lack[ed] economic substance," were "engaged in for no purpose other than to avoid or evade tax," and simply, its transactions were "not insurance transactions." App. 277, 293. The Notices increased Standard's taxable income and decreased the insureds' deductions.

## B.    Procedural History

In the fall of 2022, after the IRS issued the Deficiency Notices, Standard petitioned the tax court for a redetermination of its tax liability. Standard also made advance payments of those liabilities. The resolution of Standard's tax cases will determine what tax liability, if any, the IRS may assess, and whether the advance payments must be returned to Standard. *See* 26 U.S.C. § 6215(a). These cases remain pending.

In January of 2023, Standard filed suit in Utah district court seeking relief from the damages caused by the Deficiency Notices. Standard sought:

4

(1)    a declaratory judgment "declaring Notice 2016-66 unlawful and unenforceable" under both the Administrative Procedure Act and the Congressional Review Act and "setting Notice 2016-66 aside in its entirety";

(2)    an injunction ordering the IRS "to return or destroy . . . all documents and information produced or otherwise provided by Plaintiffs" pursuant to Notice 2016-66 and the subsequent audit;

(3)    a declaratory judgment "declaring Standard Insurances as a legitimate and legally recognized captive insurance company as determined by the Utah Insurance Department," and finding the IRS's "determination to the contrary to be void, improper and unenforceable"; and

(4)    "any additional relief . . . as the Court deems equitable and just or as otherwise allowable by law."[2]  App. 40–41.

Shortly after Standard filed suit, the IRS withdrew Notice 2016-66.  2023-17 I.R.B. 798.[3]

The district court dismissed Standard's case on jurisdictional grounds.  It found that each claim for relief was either moot or barred by the Declaratory Judgment Act (DJA) or the Tax Anti-Injunction Act (AIA).  The court found that Standard's first claim to set aside Notice 2016-66 was moot because the IRS had since withdrawn the Notice. The court then held that the DJA and AIA barred the second claim for injunctive relief because the injunction's purpose was to force the IRS to concede the pending tax court cases.  It similarly held that the DJA and AIA barred the third claim for declaratory relief because the relief would directly restrain the assessment of a tax.  That was because the

---

[2] Standard originally sought relief related to the imposition of fees and costs incurred during and stemming from the audit, but it withdrew that request.

[3] A district court set the Notice aside under the Administrative Procedure Act and the IRS subsequently withdrew it.  *CIC Servs., LLC v. Internal Revenue Serv.*, 592 F. Supp. 3d 677 (E.D. Tenn.), *on reconsideration*, No. 3:17-CV-110, 2022 WL 2078036 (E.D. Tenn. June 2, 2022).

IRS based its Deficiency Notices on the determination that Standard was not a legitimate micro-captive insurance company.

Standard timely appealed to this court.[4]

## II.    Discussion

Standard contends the district court erred in finding that the DJA and AIA barred its claims for declaratory and injunctive relief.  It argues that the DJA and AIA do not apply because its suit does not restrain tax assessment or collection, and even if it did, we should find jurisdiction under the *South Carolina* exception and reverse.

We review de novo a dismissal for lack of subject-matter jurisdiction. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003).  We construe the allegations in the complaint in favor of Standard and draw all reasonable inferences in its favor.  *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1189 (10th Cir. 2000).

### A.    Legal Framework

The AIA's and DJA's prohibitions against tax suits are "coterminous." *Green Sol. Retail v. United States*, 855 F.3d 1111, 1115 (10th Cir. 2017).  The AIA provides

---

[4] Standard initially appealed to this court to "redress the harms" the Deficiency Notices caused, even if the district court lacked jurisdiction to set aside Notice 2016-66. Aplt. Br. at 5.  But it cabined this request in its reply brief by stating that the request was meant to rebut a possible ground for affirmance that the IRS did not raise.  As a result, we do not address the issue here.  Additionally, Standard does not appeal the district court's mootness finding, so we do not address that finding either.

that "no suit *for the purpose of restraining the assessment or collection* of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a) (emphasis added). The tax exception to the DJA similarly divests jurisdiction "with respect to Federal taxes." 28 U.S.C. § 2201(a). "In other words, 'with respect to Federal taxes' means 'restraining the assessment or collection of any tax.'" *Green Sol.*, 855 F.3d at 1115 (quoting *Cohen v. United States*, 650 F.3d 717, 727 (D.C. Cir. 2011) (en banc)). Thus, both statutes bar suits whose *purpose* is to restrain assessment or collection of taxes.

To determine the purpose of a suit, the Supreme Court instructs us to focus on what relief the taxpayer seeks. *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209 (2021). The analysis "inquire[s] not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests." *Id*. at 217. We look "to the face of the taxpayer's complaint" to assess the "substance of the suit—the claims brought and the injuries alleged." *Id.* at 218 (citation modified). And the AIA "kicks in when the target of a requested injunction is a tax obligation." *Id.*

The DJA and AIA bar not only those suits whose purpose is to *directly* restrain assessment or collection but also those that *indirectly* target tax collection or assessment. The AIA "applies not only to the actual assessment or collection of a tax, but is equally applicable to activities leading up to, and culminating in, such assessment and collection." *Lowrie v. United States*, 824 F.2d 827, 830 (10th Cir.

7

1987).[5]  Similarly, we have held that the AIA barred a suit seeking to enjoin the IRS from investigating a marijuana dispensary for allegedly trafficking a controlled substance in violation of federal law because the investigation was proximate to an assessment.  *Green Sol.*, 855 F.3d at 1121.  These cases demonstrate that the DJA and AIA bar claims restraining not only "the *actual* assessment and collection of a tax," but "equally appl[y]" to claims restraining steps along the way.  *Lowrie*, 824 F.2d at 830 (emphasis added).

To be sure, the DJA and AIA do not bar all claims involving the overall assessment process.  In *CIC*, the Court explained that the AIA's prohibition is "'not keyed to all activities that may improve [the IRS's] ability to assess and collect taxes.'  It is instead 'keyed to the acts of assessment and collection themselves.'" 593 U.S. at 217 (citation omitted) (quoting *Direct Marketing*, 575 U.S. at 11–12).  That is why in *CIC*, the AIA did not bar a tax penalty aimed at a material advisor to taxpayers, who faced potential civil and criminal liability for failure to comply with the Notice's reporting requirements.  The Court in *CIC* discussed three characteristics that illuminated that the suit aimed at a separate object, the Notice, and was not a "tax action in disguise."  First, the suit was aimed at data collection and reporting

---

[5] Our holding in *Lowrie* lies in some tension with *Direct Marketing Association v. Brohl*, 575 U.S. 1 (2015), where the Supreme Court held that a suit directed to tax notice and reporting requirements was not barred by a similar statute, the Tax Injunction Act, because the suit did not "restrain" assessment but only "inhibit[ed]" it by restraining an antecedent step.  *See Green Sol.*, 855 F.3d at 1118–20 (explaining how *Lowrie* has been undercut by *Direct Marketing*).  We need not resolve that tension here because the application of the AIA and DJA in this case is fully consistent with the Supreme Court's opinion in *CIC*.

obligations that were ancillary to tax collection. *Id.* at 220. Second, the suit contested IRS action that was removed from tax assessment and the taxpayer was "nowhere near the cusp of tax liability." *Id.* at 220–21. And third, the suit sought to restrain conduct punishable by criminal penalties separate from the tax penalty. *Id.* at 221.

At their core, the DJA and AIA bar tax actions—including those that are artfully pled but remain in essence "tax action[s] in disguise." *Id.* at 219–20. In other words, if a claim for relief restrains an activity closely related to the assessment of taxes, the DJA and AIA divest federal courts of subject-matter jurisdiction.

Despite the DJA's and AIA's broad prohibitions on suits restraining tax assessment proceedings, certain judicially created exceptions might apply. One is the so-called *South Carolina* exception, which applies when a taxpayer lacks not only "access to a legal remedy for the precise harm that it has allegedly suffered" but importantly lacks "any access at all to judicial review." *Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004) (quoting *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 408 (4th Cir. 2003) (explaining *South Carolina v. Regan*, 465 U.S. 367 (1984))). In *South Carolina*, the State sought to enjoin a tax provision on the ground that it violated the Constitution. 465 U.S. at 370. Because South Carolina incurred no tax liability under the provision, it could not contest the provision in a refund suit. *Id.* at 379–80. Thus, if the AIA barred South Carolina from challenging the provision, the State would have had to depend on third parties to raise its constitutional challenge in *their* tax-refund suits. *Id.* at 380. The Court reasoned that the AIA did not bar

injunctive relief in this situation, where the State had no "alternative legal way to challenge the validity of a tax." *Id.* at 373. There are other minor exceptions, none of which are relevant here.

With this background, we turn to Standard's claims.

### B.    Standard's Claims

Standard's complaint seeks (1) a declaration that it is a legitimate micro-captive insurance company and (2) the return or destruction of any documents relating to Notice 2016-66 and the IRS audit that led to the tax Deficiency Notices.

### 1.    Captive Insurance Company Claim

As discussed above, the DJA and AIA bar claims whose "purpose" is to "restrain[] the assessment or collection of any tax." 26 U.S.C. § 7421(a); *cf.* 28 U.S.C. § 2201(a). To determine a claim's purpose under the DJA, *CIC* tells us to look at the "objective aim—essentially, the relief the suit requests." *CIC*, 593 U.S. at 217. We look at the "face of the taxpayer's complaint," the "claims brought and injuries alleged"—to determine the suit's object. *Id.* at 218.

Standard's complaint asks the court for a declaration that, as it puts it, effectively requires the IRS to "conced[e] the Plaintiffs' cases before the U.S. Tax Court." App. 34. Its overarching claim for relief is a declaration that the Deficiency Notices are void because Standard is a legitimate captive insurance company. And if Standard is declared a legitimate captive insurance company, its tax assessment would be doomed. That is the same argument Standard has been making in the tax-court proceedings from the beginning to avoid a tax deficiency. In short, declaratory

10

relief, if granted, restrains the IRS's ability to defend its deficiency determination in the pending tax-court litigation.

Standard nevertheless contends that its declaratory relief will not prevent the tax court from assessing its deficiencies because the IRS gave alternative grounds for the deficiencies in addition to its conclusion that Standard was not a qualifying micro-captive insurance company. Standard points to the IRS's explanation that the transactions (1) "lack economic substance," (2) "were engaged in for no purpose other than to avoid or evade tax," (3) the payment premiums were not "ordinary and necessary" business expenses, and (4) they "were not paid for insurance" and were "not insurance transactions." Aplt. Br. 41. Thus, Standard argues, the IRS's tax assessment can go forward notwithstanding Standard's federal suit.

Standard's argument is unpersuasive. The alternative grounds the IRS cited are peas-in-a-pod with Standard's micro-captive insurance company theory. They all flow from the IRS's foundational finding that Standard was not a legitimate captive insurance company. As the IRS said in its Deficiency Notice to Standard, the "premium income" transactions were "not insurance transactions within the meaning of the federal tax law" because Standard was "not [a micro-captive] insurance company." App. 277. Contrary to Standard's argument, the invalidity of the insurance transactions was not an independent ground for the Deficiency Notice; it

11

flowed inextricably from the IRS's determination that Standard was not a micro-captive insurance company at all.

The same holds true for the IRS's Deficiency Notices sent to Standard's insured companies, which had claimed deductions for their premium expenses. The IRS stated that the insureds' payments were not "paid to an insurance company and that they were not paid for insurance," that they were not "ordinary and necessary" business expenses, that the "purported insurance and/or reinsurance transactions lack[ed] economic substance," that the "substance of the transactions [did] not comport with their form, and that the various steps involved . . . were engaged in for no purpose other than to avoid or evade tax." App. 293. The declaratory relief Standard seeks would restrain the tax court from upholding the basis of the IRS's Deficiency Notices, relief that would inexorably restrain tax assessment.

As a last resort, Standard contends that the *South Carolina* exception excuses the DJA bar. Standard is ineligible for the *South Carolina* exception for a simple reason. Unlike the plaintiff in that case, Standard has an avenue to challenge the contested tax deficiencies: tax court. It is currently availing itself of that option. If the tax court rules against it, that ruling can be appealed to a district court and then to this court. *See, e.g.*, *Rsrv. Mech. Corp. v. Comm'r*, 34 F.4th 881, 902–16 (10th Cir. 2022) (reviewing a tax court's decision that a taxpayer was not an insurance company for federal tax purposes). Standard can also challenge that ruling in a tax-refund action, where the insurance company issue can be fully litigated. *See South Carolina*, 465 U.S. at 376 (implying that a taxpayer can litigate issues subordinate to

12

tax deficiency in a refund suit). Standard counters that it cannot achieve the precise relief it seeks, but its protestations miss the mark. *South Carolina* provides federal courts jurisdiction when a plaintiff has no alternative to challenge a tax; it does not provide jurisdiction for all relief requested. This court's decision in *Ambort* makes this point clear. In *Ambort*, a taxpayer prepared tax returns claiming he was a nonresident alien and thus exempt from most federal income taxes, and he assisted other U.S. residents in preparing similarly false returns. *Ambort*, 392 F.3d at 1139. The taxpayer sought declaratory relief that he could make his refund claims without being subject to prosecution and injunctive relief to restrain the United States from criminally prosecuting him for his tax-refund claims. *Id.* We held that the DJA and AIA barred his claims for relief, even though the tax court could not grant him the requested declaratory and injunctive relief, because he could challenge the validity of the relevant taxes in a tax-refund suit. *Id.* at 1140. The question was not whether he had "access to a legal remedy for the precise harm . . . but whether [he] ha[d] any access at all to judicial review." *Id.* (quoting *Judicial Watch*, 317 F.3d at 408).[6]

---

[6] Standard also claims that the IRS is violating the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, by contradicting the state of Utah's determination that it is a properly licensed insurance company. That theory, too, can be pursued in other proceedings. *See Mod. Life & Acc. Ins. v. Comm'r*, 420 F.2d 36 (7th Cir. 1969) (addressing McCarran-Ferguson Act argument raised in a tax-court case).

In sum, because the tax exception to the DJA stripped the district court's jurisdiction to hear Standard's claim for declaratory relief, and Standard does not qualify for an exception, the district court correctly dismissed Standard's claim.

### 2.    Documents Claim

Standard also seeks an injunction ordering the IRS to "return or destroy . . . all documents and information produced or otherwise provided by Plaintiffs pursuant to the unlawful Notice 2016-66 as well as the subsequent unlawful audit."  App. 40.  The crux of this argument is that Notice 2016-66 (seeking information from micro-captive insurance companies) was not a lawful exercise of agency authority.[7]

As we explained above, to determine a claim's purpose under the AIA, *CIC* tells us to look at the "objective aim—essentially, the relief the suit requests."  *CIC*, 593 U.S. at 217.  The court must not speculate on a taxpayer's "innermost reasons for suing," but must look to the "substance of the suit."  *Id.*  at 218.  We do not look at the requested relief in isolation.  Instead, we look at the "face of the taxpayer's complaint," the "claims brought and injuries alleged"—to determine the suit's object. *Id.* at 218.  And if the requested relief intrudes on a closely proximate step in order to restrain the collection of taxes, it is barred by the AIA.  *See id.* at 219–20.

It is plain that Standard's purpose in enjoining use of the documents is to restrain or impede the IRS's assessment and collection of taxes by removing the underlying evidentiary support for the Deficiency Notices.  Although Standard has

---

[7] The Notice was rescinded during the pendency of these proceedings.  2023-17 I.R.B. 798.

made an advance payment on the deficiency, the tax-court proceedings will confirm the existence and amount of the deficiency, and any amount determined by the tax court "shall be assessed." 26 U.S.C. § 6215(a). Thus, the destruction or return of the underlying documents would operate to hinder the tax court's determination of the deficiency, a necessary and proximate step in assessment.[8]

Standard contends that the purpose of this claim is not to restrain a tax at all but to address a separate legal wrong of the IRS's possessing and retaining these documents. It says the IRS's possession and retention of its documents pose potential privacy and security risks: the IRS may share the information with other government agencies or otherwise fail to protect the privacy of the information. But Standard inadequately mentioned these supposed harms in its complaint, and it is unclear why the injunction would prevent the IRS from obtaining the documents through other means. Rather, Standard asks the court to destroy the documents produced in the audit to undermine the deficiency determinations it is challenging in the tax-court proceedings.

Because Standard's complaint demonstrates that its purpose in seeking injunctive relief is to restrain tax assessment by obstructing (at least temporarily) the retention of key evidence, the AIA bars Standard's documents claim.

*    *    *

---

[8] While the IRS might still obtain this information through discovery in tax court, the destruction or return of this information necessarily stymies assessment, even if temporarily, an objective that Standard readily admits. Repl. Br. at 7.

In sum, the DJA and AIA bar claims whose purpose is to restrain tax assessment or collection—and the claims here share that purpose. The district court correctly found that the DJA and AIA precluded it from hearing Standard's suit.

## III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal of the complaint.